[No. 4459.  Decided February 20, 1903.]

ANNIE VOWELL *et al., Respondents,* v. ISSAQUAH COAL COMPANY, *Appellant.*

WITNESSES — CROSS-EXAMINATION.

In an action for the death of a coal miner, due to the fact that the timbers in the air-shaft caught fire from fires outside the mine, it was not error to allow a witness to be asked on

cross-examination, although not examined in chief on the point, as to whether, if a system of bells had been provided in the mine, deceased could have been notified of the fire in time to have saved his life, where the witness had testified in chief that he was superintendent of the mine and had been examined as an expert upon the proper handling of the mine.

TRIAL — MISCONDUCT OF ATTORNEY — INDULGENCE IN COLLATERAL REMARKS.

The fact that attorneys in the course of a heated trial indulged in collateral remarks, not pertinent to the issues, would not be ground for reversal, in the absence of a showing that the jury was unduly influenced thereby to the prejudice of the adverse party.

JURORS — MISCONDUCT — CONVERSATION WITH PARTY.

The refusal of the court to discharge a jury during trial because one of the jurors and one of the plaintiffs had indulged in a conversation together during an intermission was not error, where it appeared that the talk had by them was not upon the subject of the trial, was publicly had in the corridor of the court house before many people and in the presence of some of them, and there was no showing indicating intrigue between the juror and the party.

EXCESSIVE DAMAGES — DEATH BY WRONGFUL ACT.

A verdict of $10,000 for the death of a coal miner through defendant's negligence was excessive, where the deceased was a man fifty-five years of age, with an expectancy of life of seventeen years, and an earning capacity of $50 per month, which could not presumably be continued without intermission until he was seventy-two years of age, especially in view of the fact that his employment had never been constant prior to the time of his death.

Appeal from Superior Court, King County.—Hon. GEORGE MEADE EMORY, Judge. Affirmed.

*Piles, Donworth & Howe,* for appellant.

*John B. Hart* and *William Parmerlee,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—This is an appeal from a judgment of the superior court of King county in favor of plaintiffs for

$10,000 recovered in an action for damages for the death of C. H. Vowell, the husband of Annie Vowell, and the father of George and John Vowell. The deceased, at the time of his death, was a coal miner, working in the Issaquah coal mine, which was owned and operated by appellant. His death was caused by a fire in the mine. The contention of the respondents is that the timbers of the air shaft were ignited by a forest fire which had been burning for some days prior to the accident; that at the time in question, which was in the month of August, the forests were dry and combustible; that around the entrance of the air shaft timbermen had been at work during the previous May of 1900, shaping and sawing timber to be used in the mine; that these men left a great quantity of chips, shavings, and other debris lying around the air shaft at the entrance of the mine; that the entrance was not protected in any manner whatsoever; that the defendant had full knowledge of this condition of affairs, and no watchman was placed there, nor was anything done to protect the mine from fire in that regard; and that the fire had been burning near the air shaft for several days previous to August 21, the date of the death of Vowell. It was the contention of the appellant that certain persons constructing a county road set a fire in the forest, which fire escaped during the night, and the sparks herefrom fell into the air shaft, and set the timbers on fire. But certain it is that the mine took fire, and for the want of proper use of the fan the life of Vowell was lost. Only a meager portion of the testimony is brought here, and it is difficult to intelligently determine all the questions raised upon such state of facts.

The first assignment of error is that the court erred in allowing the witness Brooke to be interrogated on cross-examination as to whether, if a system of bells had

been provided in the mine, the deceased could have been notified of the fire, and his life have been saved; because there was no such issue under the pleadings, and because the witness Brooke had not been interrogated on his direct examination in regard to a system of bells. But we think the court did not commit error in this respect; that it was a question of caution on the part of the mine owners that could properly be examined into under the pleadings and under the direct examination of witness Brooke.

The second assignment embraces the alleged misconduct of counsel for respondents in making remarks which had a tendency to inflame the minds of the jurors against the appellant. We have examined the record with reference to this assignment, but are unable to conclude therefrom that any prejudicial error was committed. It was a heated controversy and many collateral remarks were made by the attorneys on both sides, which were probably not entirely pertinent to the issues, and it may be the case could have been tried more properly with less acrimonious discussion and fewer interjected remarks. But it is not given to all attorneys to try a law suit with equal grace and courtesy and consideration. Differences in temperament, education, and even disposition must be considered, and allowance made therefor. On the whole, we think the jury was not unduly influenced. if influenced at all, by the conduct complained of.

It is strenuously insisted that the court erred in not granting the motion of appellant for the discharge of the jury at a certain stage of the proceedings, because of alleged misconduct of one of the plaintiffs and one of the jurors in engaging in conversation during the recess of the court. The following statement was made during the trial by counsel for appellant:

"I want to move the court to discharge this jury from

further consideration of this cause for improper conduct on the part of one of the parties plaintiff and improper conduct on the part of one of the jurors, and I would like to call witnesses on that point."

The counsel proceeded to state, in substance, that he had seen Charles Johnson, one of the jurors, talk for a minute or a minute and a half with George Vowell, one of the respondents; that, after a seeming observation by him of the juror and said respondent, they separated, and that they were afterwards seen talking together again. It was upon this state of facts that the controversy arose. There did not seem to be any objection on the part of counsel for respondents to the investigation of the question. In fact, he demanded that the juror and the said respondent should be called upon the stand and questioned, and what was said ascertained. After a good deal of discussion between the court and the respective counsel, the court concluded that he was without authority to discharge the jury, and the motion was denied, and the cause proceeded. A large number of cases have been cited by the appellant in support of the contention that the court erred in denying the motion to discharge the jury, many of which are from this court. But without especially reviewing them, we think none of them are in point, or go so far as to hold that a casual remark or conversation between a juror and a litigant, before the jury has retired to consider of its verdict, would warrant a discharge of the jury. This conversation occurred in the public corridor at the court house where jurors, witnesses, litigants, and spectators were mingling indiscriminately, and, while it is absolutely necessary that juries should be kept beyond the influence of interested parties, or even above the reasonable suspicion of undue influence, it does not seem to us that, considering the circumstances of the case, the

publicity of the meeting, the fact that it is customary for country people to greet each other when they meet in public places, the want of any circumstance showing intrigue on the part of the juror and the respondent, or any attempt to escape observation, the policy of the law would warrant a discharge of the jury, or that the presumption of an attempt to use undue influence would obtain. It is insisted by counsel for appellant—and it is no doubt true—that, where an attempt has been made to unduly influence a juror, the presumption would be that such attempt was successful. But such was not the case here. In addition to this, upon motion for a new trial, affidavits were filed by the juror Johnson, who is charged with misconduct, by respondent George Vowell, and by a witness to the conversation. The juror, in his affidavit, testifies that he knew that it was not proper, right, or lawful for him to discuss the subject of the law suit with anybody, and that he had not done so in any particular; that the conversation to which counsel had referred was upon an entirely different subject; that he had simply been discussing with young Vowell a marriage of some mutual acquaintance at Falls City, and that nothing else was talked about. The affidavits of Vowell and the witness who overheard the conversation were of similar import. So that, under all the circumstances, it seems to us that it would be inconsistent with reason to sustain the contention that error had been committed in this respect.

We do not think that it is necessary to go into a discussion of the other errors alleged in appellant's brief. The questions presented have all been discussed by this court so often that a reannouncement of the law governing them would be the purest repetition. The court certifies that plaintiffs produced evidence tending to prove that the air

shaft of defendant's mine opened into a forest; that the defendant had knowingly and negligently permitted large quantities of chips and forest debris to accumulate around the mouth of the air shaft; that it was the summer season, and that the chips and debris had become very inflammable; that this condition had been known to the defendant; that forest fires had been of frequent occurrence in the vicinity in former years; that forest fires surrounding the shaft had existed several days preceding this fire in the mine which resulted in Vowell's death, and that the day preceding the fire in the mine there was fire between the air shaft and the company's mine, and the company's officers knew that fact; that there was no watchman stationed at the mouth of the air shaft, or in that vicinity; that the air shaft was the sole means of ventilating the mine, which was effected by a powerful fan at the other entrance of the mine upon the opposite side of the mountain; that the fan, in its usual operation, sucked or drew the air into the mine through the air shaft, causing a strong current of air to flow into the mine, the entrance to which at the air shaft was strengthened by large timbers and lagging; that just prior to decedent's death he, with others, was engaged in mining coal inside the mine; that, as a result of the foregoing alleged facts, the fires burning in the forests were communicated to the timbers in the mouth of the shaft, and were drawn by the air current some two hundred feet into the mine, creating dense volumes of smoke, which passed into the mine workings, and resulted in decedent's death; that, had the fan been reversed, the current of air would have carried out the smoke, and averted the death of decedent, and that due care required such a course.

This being true, and the testimony on the subject em-

braced in the certificate not being before the court, and no error having been committed by the court in giving or refusing instructions, so far as can be determined by this court upon the record as presented, there is but one subject left for the investigation of the court, and that is the question of the excessiveness of the verdict, it being contended by the appellant that the verdict was excessive, and plainly the result of prejudice or passion. The decedent, at the time of his death, was a man fifty-five years old, and was receiving for his services $50 per month. His expectancy of life was proven to be seventeen years. The verdict was, therefore, within $200 of the amount which he would have received at the rate of wages which he was earning at the time of his death, if he had lived during the time of his expectancy, and received full wages during all that time. We think, under the circumstances, that this was an unreasonable conclusion reached by the jury. The jury acted upon the theory that the expectancy proven was a reality. It is a fact, lamentable as it may be, that the earning capacity of men decreases after middle life, and usually decreases very rapidly. This man had already lost one eye. He was at the time of life when his physical vigor was on the wane. No other means of obtaining a livelihood or making money was attributed to him than as a worker in a coal mine. The verdict of the jury makes no allowance, not only for a decrease in his wage earning capacity, but for accident, illness, or break in time employed, whether voluntary or involuntary. We do not think that the jury could reasonably have concluded that the decedent would, without intermission, have continued to earn the sum of $50 a month until he was seventy-two years old, to say nothing of the expenses necessary to his own subsistence during that time. It would be a matter of simple impossibility that this amount

of money, even if he had lived during the term of his expectancy, could have been received by his estate, and the testimony of his wife shows that his employment theretofore had not been constant. While this court dislikes to interfere with the prerogative of the jury in passing upon questions of fact, when a verdict rendered shows conclusively that the judgment could not have been based upon the testimony produced it becomes its duty to interfere. We think, under all the testimony as shown in this case, including that in relation to the earning power of the deceased as presented in the record, a verdict of $6,000 would have been as great a one as could be sustained.

Instead, however, of reversing the cause and entailing upon these respondents the expense of a new trial, the judgment of the court will be that, if the respondents within twenty days from the filing of this opinion remit from the judgment obtained the amount of $4,000, the judgment, as so amended, will be affirmed; otherwise the judgment will be reversed and a new trial granted.

FULLERTON, C. J., and MOUNT, HADLEY and ANDERS, JJ., concur.