[No. 8383. Department Two. May 6, 1910.]

KATIE WALTERS *et al., Respondents,* v. SPOKANE INTERNATIONAL RAILWAY COMPANY, *Appellant.*[1]

MASTER AND SERVANT—RAILROADS—DEFECTIVE ROADBED—EVIDENCE—SUFFICIENCY. A finding that a derailment was due to the defective condition of a railway roadbed is sustained, where there was competent evidence that the track was new, inferior ties had been used, the rails had not been spiked to all the ties, it was not properly surfaced or ballasted, and the train that was derailed was running at moderate speed.

EVIDENCE—RES GESTAE—STATEMENTS OF EMPLOYEES—REMOTENESS. Statements made by the conductor of a derailed train to the effect that the accident was caused by the pulling of spikes, the spreading of the rails, and a "bum track," are admissible as part of the *res gestae*, where it appears that he was the company's chief representative in charge of the train, that he went forward and was the first to reach the scene of the accident, where he gave attention to two men fatally injured, that he ran about a mile and occupied some time in sending a long distance telephone for relief, and walked back to the train, where he arrived almost two hours after the accident, at which time the statements were made under conditions of responsibility and anxiety tending to render them spontaneous and truthful, without their being the result of reflection or premeditation; the question of remoteness being within the discretion of the trial judge, and to be determined by the circumstances of each case (RUDKIN, C. J., dissenting).

[1]Reported in 108 Pac. 593.

RAILROADS—DEFECTIVE TRACK—EVIDENCE—ADMISSIBILITY—TRIAL. Upon an issue as to the defective condition of a new railroad track and roadbed which caused the derailment of a train, it is not error to exclude evidence offered by the railroad company to show that the same was in as good condition as is customary with roads of like age, where great latitude was allowed in receiving evidence of experienced men as to all the details of proper construction and condition of new tracks.

DEATH—EXCESSIVE DAMAGES. A verdict for $20,000 for the death of a railroad brakeman is excessive, and should be reduced to $15,000, where the deceased was forty-four years of age, earning $100 to $120 per month, with a life expectancy of twenty-five years.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered November 14, 1908, upon the verdict of a jury rendered in favor of the plaintiffs for $20,000, in an action for the death of a railway employee. Reversed, and a new trial ordered unless $5,000 is remitted.

*Allen & Allen* and *Graves, Kizer & Graves*, for appellant, to the point that the statements of the conductor were not part of the *res gestae* and were inadmissible, cited: 2 Wigmore, Evidence, § 1422; 3 Id., § 1747; *Travelers' Ins. Co. v. Sheppard*, 85 Ga. 751, 12 S. E. 18; *Merkle v. Bennington,* 58 Mich. 156, 24 N. W. 776, 55 Am. Rep. 666; *Lambert v. La Conner Trad. & Transp. Co.*, 30 Wash. 346, 70 Pac. 960; *Dixon v. Northern Pac. R. Co.*, 37 Wash. 310, 79 Pac. 943, 107 Am. St. 810, 68 L. R. A. 895; *Starr v. Aetna Life Ins. Co.*, 41 Wash. 199, 82 Pac. 113, 4 L. R. A. (N. S.) 636.

*Charles P. Lund* and *Hamblen & Gilbert*, for respondents.

CROW, J.—This action was commenced by Katie Walters, in her own behalf and as guardian *ad litem* of John S. Walters and William H. Walters, minors, against Spokane International Railway Company, a corporation, to recover damages for the death of William H. Walters, husband and father of the plaintiffs. From a judgment in their favor, the defendant has appealed.

William H. Walters, while serving the appellant as head

brakeman on a freight train, was so badly scalded in a derailment of the engine on which he was riding that he died the next day. The respondents alleged the accident was due to negligence of appellant in permitting its roadbed, track, rails, and ties to be and remain in an unsafe condition. The appellant alleged that the accident occurred in Idaho; that under the laws of that state William H. Walters was a fellow servant of George E. Kendall, the engineer, who caused the wreck by negligently running the train at a dangerous speed, and that Walters was guilty of contributory negligence in failing to set the brakes. The jury returned a verdict for $20,000, and answered interrogatories propounded at appellant's request, as follows:

"(1)  Was defendant's roadbed in a weak and insecure condition at the point where the wreck occurred? Answer: Yes.

"(2)  If you answer that it was, state in what respects it was weak and insecure. Answer: The track was not properly surfaced and ballasted; and that a large percentage of the ties were culls; and a large percentage of the ties were of black pine, and the roadbed was too narrow.

"(3)  Were the rails insecurely fastened to the ties at the point where the wreck occurred? Answer: Yes.

"(4)  At what rate of speed was the train running at the time it left the rails? Answer: Between sixteen and twenty miles per hour.

"(5)  At what rate of speed was it reasonably safe to run a train like the one that wrecked, over the track at the place where it was wrecked? Answer: We are unable to state.

"(6)  Was the wreck occasioned by a defective condition of the track and roadbed, or by the rate of speed of the train, or by the condition of the track and roadbed and the rate of speed jointly? Answer: The wreck was caused wholly by the defective condition of the track and roadbed?"

Appellant first contends the evidence was not sufficient to sustain a recovery, and that the trial court erred in denying its motion for a directed verdict. As stated by appellant's counsel, "The record in this case is of fear-inspiring bulk."

The evidence is too voluminous to be stated in this opinion. We find it sufficient to sustain a verdict in respondents' favor. There was competent evidence that appellant's track, although new, was in a dangerous condition; that inferior and unsafe ties had been used in its construction; that the rails had not been spiked to all the ties; that the track had not been properly surfaced; that the road had not been ballasted; that the train was running at a moderate and safe rate of speed, and that the unsafe condition of the track caused the rails to spread and ditch the engine. Other evidence offered by appellant tended to show that the track although new was safe, well constructed, and in good condition; that it was being constantly examined and repaired by appellant's employees; that the accident was caused by the act of the engineer, who ran the train at a reckless and dangerous rate of speed, and that the appellant was without fault. This conflicting evidence was properly submitted to the jury, and it is manifest from their verdict and special findings that they accepted and credited the statements of the respondents' witnesses.

Immediately after the accident, J. D. Lahey, the conductor in charge, went forward from the rear end of the train, saw the ditched engine, the condition of the track, rails, and ties, and the injured men. Returning to his caboose, he attempted to attach a telephone instrument to the wires, and call appellant's head offices at Spokane, nineteen miles distant. Failing in this, he ran about one mile to a farm house, where he obtained the use of a long distance telephone and occupied about twenty-five minutes in calling Spokane and arranging for a relief train, and assistance for the injured men. He then walked back to his train. Living at the house was one Samuel Williams, who dressed himself and, accompanied by one Scharpenberg, followed the conductor. The accident occurred about 10:45 p. m., and it was almost two hours later when Williams reached the train. Walters, the head brakeman, and the engineer Kendall were fatally injured. They

had been removed to the conductor's caboose, where they were awaiting medical assistance. Williams, as a witness for respondents, testified in part as follows:

"Q. Just state what the conductor said there at that time. A. Well he said that it was caused by a rail, the spikes pulling out and letting the rail turn over and the spreading of the track. . . . Q. What did he say at that time about the condition of the roadbed or about the company maintaining a roadbed? A. Well he said it was a bum track."

These alleged statements were admitted as part of the *res gestae*, and the appellant now insists that the trial court erred in overruling its objections thereto; that the statements were incompetent, immaterial, and hearsay, being made long after the accident, and that they constituted no part of the *res gestae*. It appears that Williams and his companion were the first persons to reach the train after the accident, other than those upon the train; that the conductor was appellant's chief representative then upon the scene and in charge of the train. He had the injured brakeman and engineer in his care. Both of them were severely injured, suffering intensely, in need of immediate medical attention, and were receiving such assistance only as the remainder of the train crew could give. The conductor was in a condition of responsibility and anxiety which directly tended to render his statements spontaneous, impulsive, and truthful, and to negative the idea that they might be the result of reflection. Appellant insists that his statements were too remote in point of time from the actual ditching of the train to be admissible. Although it is the usual rule, that contemporaneous declarations, explanatory of the principal occurrence, made under circumstances excluding the idea of premeditation, are competent as part of the *res gestae*, it is not always essential to their admissibility that the declarations and principal occurrence shall be identical in point of time. In many instances the former may succeed the latter by a considerable period. This court has so held in numerous cases: *Roberts v. Port Blakely Mill Co.*, 30 Wash. 25, 70 Pac. 111; *Lambert v. LaConner Trading &*

*Transp. Co.*, 30 Wash. 346, 70 Pac. 960; *Dixon v. Northern Pac. R. Co.*, 37 Wash. 310, 79 Pac. 943, 107 Am. St. 810, 68 L. R. A. 895; *Starr v. Aetna Life Ins. Co.*, 41 Wash. 199, 82 Pac. 113, 4 L. R. A. (N. S.) 636.

It is not always necessary that statements or admissions should be exactly concurrent with the principal act if they arise naturally therefrom, without evidence of premeditation, and directly tend to characterize or explain it. The surrounding circumstances and conditions may be shown, and the determination of the competency and admissibility of the declarations as a part of the *res gestae* will then, as a general rule, rest largely in the sound discretion of the trial judge. Mr. Wigmore, at § 1700, vol. 3, page 2256, of his work on Evidence, says:

"It is to be observed that the statements *need not be strictly contemporaneous* with the exciting cause; they may be subsequent to it, provided there has not been time for the exciting influence to lose its sway, and to be dissipated. The fallacy, formerly entertained by a few courts, that the utterance must be strictly contemporaneous (post, § 1756) owes its origin to a mistaken application of the Verbal Act doctrine: . . . Furthermore, there can be *no definite and fixed limit* of time. Each case must depend upon its own circumstances: . . . Since the application of the principle thus depends entirely on the circumstances of each case, it is therefore impossible to regard rulings upon this limitation as having in strictness the force of precedents. To argue from one case to another on this question of 'time to devise or contrive' is to trifle with principle and to cumber the records with unnecessary and unprofitable quibbles. There is a lamentable waste of time by supreme courts in here attempting either to create or to respect precedents. Instead of struggling weakly for the impossible, they should decisively insist that every case be treated upon its own circumstances. They should, if they are able, lift themselves sensibly to the even greater height of leaving the application of the principle absolutely to the determination of the trial court. Until such a beneficent result is reached, their lucubrations over the details of each case will continue to multiply the tedious reading of the profession."

The authorities differ as to the instances in which such declarations should be admitted.  The circumstances of each case should be carefully weighed by the trial judge in exercising his sound discretion and in arriving at a correct determination.  *Grant v. Oregon R. & Nav. Co.*, 54 Wash. 678, 688, 103 Pac. 1126.

In *State v. McDaniel*, 68 S. C. 304, 47 S. E. 384, 102 Am. St. 661, 666, the court said:

"When the declarations are not precisely concurrent with the transaction, a delicate and complex question is presented to the trial judge in determining their admissibility, and each case must be decided upon its own circumstances.  In the nature of the case, there can be no hard-and-fast rule as to the precise time near an occurrence within which declarations explanatory thereof must be made, in order to be admissible. The general rule is that the declarations must be substantially contemporaneous with the litigated transaction and be the instinctive, spontaneous utterances of the mind while under the active, immediate influences of·the transaction, the circumstances precluding the idea that the utterances are the result of reflection or design to make false or self-serving declarations.   .   .   .   These circumstances of time and place do not alone necessarily prevent a declaration from being part of the *res gestae*, but they are factors, with other circumstances, in determining whether the declarations were the spontaneous utterances of the mind under the immediate influence of the transaction. ..   .   .   Questions of this kind must be very largely left to the sound judicial discretion of the trial judge, who is compelled to view all the circumstances in reaching his conclusion, and this court will not reverse his ruling, unless it clearly appears from undisputed circumstances in evidence that the testimony ought to have been admitted or rejected, as the case may be."

It necessarily devolves upon the trial judge to pass upon the competency of the evidence offered.  In *Roberts v. Port Blakely Mill Co., supra*, the declarations of the superintendent were made about three hours after the accident.  In passing upon their admissibility as part of the *res gestae*, this court said:

"The declarations of Mr. Tew were not the narration of a past event, but were the natural declarations growing out of the event, and were so nearly contemporaneous with the accident as to be held to be in the presence of it, and were made under such circumstances as necessarily to exclude the idea of design or deliberation. They were made by one having the control and management of the road. Under these circumstances we think the declarations were admissible."

The appellant, citing the recent case of *Henry v. Seattle Elec. Co.*, 55 Wash. 444, 104 Pac. 776, contends that it is controlling here. That case can be readily distinguished. The conductor had left the scene of the accident, had proceeded with his usual employment, had taken his car to the end of his run, had returned on another trip, and could not have anticipated that he would again meet the driver of the wagon at the place where the collision had occurred. It was a fortuitous circumstance that he did so. He had ample time to devise, contrive and reflect, and his statements made after his return were properly excluded as hearsay, and not a part of the *res gestae*. Although the conductor in this case had left his train, he did so under compulsion, for the purpose of procuring assistance. His train remained in the ditch at the place of the accident, and was still in his charge. He was the principal representative of the appellant. Two of his crew who had been fatally injured were without medical attention. Much responsibility rested upon the conductor. He had telephone instruments to communicate with his superiors in case of necessity. When needed, these instruments failed to perform their functions. His trip to the farm house one mile distant was one of necessity, made in the midst of grave responsibilities. Before the evidence of Williams was admitted the respondents called the conductor and had him narrate the details of his trip and the length of time he thus occupied. The trial judge saw him and the witness Williams, and heard them both testify. He heard other evidence describing the accident, and the surrounding circumstances. He was in a position to exercise his sound discretion and determine whether

the alleged declarations should go to the jury for their consideration as a part of the *res gestae,* and we cannot find that his discretion was abused. The conductor was permitted to, and did, deny the evidence of the witness Williams. The jury were able to pass upon their credibility, and conclude whether the alleged declarations were made, and if made, whether they were spontaneous and truthful, or the result of reflection. A vast amount of evidence, showing all the circumstances, was introduced and considered by the jury, and we do not feel that we would be justified in concluding that the trial judge has so abused his discretion in admitting this evidence as to constitute prejudicial error and necessitate a new trial.

Appellant further contends that the trial court erred in refusing its offer of evidence to show that its roadbed and track were in as good condition as is customary with roads of like age and carrying like traffic. The appellant was permitted to introduce evidence of experienced railroad men showing proper methods of construction, the ties, rails, and other material that should be used, how the grade should be made, how the track should be surfaced and ballasted, the tendency of a new track to settle after rains, and in fact all details on the subject. The record is of sufficient length to satisfy the most critical that much latitude was accorded both parties in the introduction of evidence. The appellant was granted every reasonable opportunity for showing facts which would aid the jury in finding whether the track was in as reasonable and safe a condition as it should be.

The appellant further insists the judgment is excessive. This contention must be sustained. The evidence shows that the deceased was a man forty-four years of age; that he had been stage driver, bridge carpenter, miner, stationary engineer, locomotive fireman, and brakeman; that at the time of the accident he was making from $100 to $120 per month, and that his life expectancy was twenty-five years. Verdicts must be compensatory only. After full compensation has been reached, no further award should be made. The judg-

ment is excessive. It is ordered that, if within thirty days after the filing of the remittitur the respondents shall serve upon the appellant and file with the clerk of the superior court their written consent to remit $5,000 of the damages awarded, the judgment as thus reduced, with interest from the date of the trial, be affirmed, and that otherwise a new trial will be granted. The appellant will recover its costs in this court.

DUNBAR, MOUNT, and PARKER, JJ., concur.

RUDKIN, C. J. (dissenting)—I cannot agree that statements made by the conductor, under the circumstances disclosed by the record, two hours after the accident, were a part of the *res gestae*, and I therefore dissent.