[No. 11598½.  Department Two.  March 25, 1914.]

JENNIE GRAHAM et al., Respondents, v. ALLEN & NELSON
MILL COMPANY, Appellant.[1]

MASTER AND SERVANT — INJURIES — NEGLIGENCE — QUESTIONS FOR JURY. The master is liable for the death of an assistant on an edger who was killed when the edgerman, in violation of his duty, lifted the rollers without stopping the saws, thereby allowing a timber to kick back and strike the deceased; on the theory that the edgerman was a vice principal as to his assistant.

SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. In such a case, the contributory negligence of the deceased in not getting out of the way is for the jury, where it appears that he was inexperienced, that it was the duty of the edgerman to keep the rollers down, and the situation was safe had he done so.

SAME—FELLOW SERVANTS—VICE PRINCIPAL. An edgerman charged with the duty of keeping the rollers down while the saws are in motion, as a matter of safety to the crew, is not a fellow servant, but a vice principal, as to assistants working under him.

[1]Reported in 139 Pac. 591.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS. In an action for the death of an assistant at an edger, an erroneous instruction submitting an issue as to the defective condition of the machine, when there was no evidence to sustain such issue, is not necessarily prejudicial, where it was apparent from the whole record that no claim was made as to defects in the machine, but the case was rested upon the negligence of the vice principal.

SAME. An instruction as to the negligence of the defendant is not prejudicial in that it excludes any reference to contributory negligence, where other instructions fully covered the subject of contributory negligence.

DEATH—DAMAGES—EXCESSIVE VERDICT. A verdict for $17,500 for the death of a laborer, 33 years of age, earning $2.75 per day, his maximum earning power, is excessive, and should be reduced to $10,000.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered April 29, 1913, upon the verdict of a jury rendered in favor of the plaintiffs, for $17,- 500, in an action for wrongful death of an employee in a sawmill. Reversed, unless $7,500 is remitted.

*Hughes, McMicken, Dovell & Ramsey* and *Otto B. Rupp,* for appellant.

*Walter S. Fulton* and *Arthur E. Griffin,* for respondents.

PARKER, J.—The plaintiffs seek recovery of damages, which they claim resulted to them from the death of Engene F. Graham, their husband and father, caused by the negligence of the defendant, while he was employed in its sawmill, at Monohan, in King county. The trial resulted in verdict and judgment in favor of the plaintiffs for the sum of $17,500, from which the defendant has appealed.

The principal contention made by counsel for appellant is that the evidence does not support the verdict, and that the trial court erred in refusing to direct a verdict in its favor, or grant a new trial upon that ground. A careful reading of all of the evidence contained in the statement of facts convinces us that the jury was warranted in concluding that the following facts were established thereby: For some

time prior to his death, Eugene F. Graham was employed
at appellant's sawmill in loading slabs on flat cars. . He was
an unskilled workman. Two days prior to his death, he was
put to work as line-up man, under the direction of the edger-
man. He was inexperienced in this work. It was his duty
there to attend to the rear end of the large pieces as they
came from the head saw to the edger, and assist in lining
them up properly for entering the edger to be sawed into
pieces of smaller dimension. The edger contained an arbor,
carrying five circular saws. The pieces entered the edger
against the saws, under a heavy roller, which held them down
and prevented them from being raised by the saws and
thrown back in case the saws became heated and bound, which
they were apt to do, from different causes. It was the duty
of the edgerman to operate the edger and, among other
things, to raise and lower the rolls as became necessary upon
a piece entering the edger. This was done by means of a
lever within reach of the edgerman. The offbearer was also
under the direction of the edgerman. The offbearer worked
near the edgerman and, among other things, assisted in
lining up the pieces, ready for entering the edger.

Emil Fish was acting as edgerman for two days after
Graham went to work as line-up man. On the morning of
the third day, Erickson was employed and put to work by
appellant as edgerman. Erickson claimed to be experienced
in, the work. Appellant's foreman, who employed Erickson,
made no inquiry as to Erickson's experience or competency
other than inquiry from Erickson himself. The proper oper-
ation of the edger requires an experienced man, and is at-
tended with great danger unless operated with care and skill.
Great care is particularly required in keeping the heavy
roller down on a piece as it enters the edger, to prevent it
being raised by the saws and violently thrown back towards
the position occupied by the line-up man. A piece cannot
be thrown back from the saws while the roller is kept down
upon it, even though the saws do become heated and bind.

Erickson went to work as edgerman; Fish, the former edgerman, working by him as offbearer for the time being, and also instructing him as to the sawing of the lumber in varying dimensions suitable for filling the orders. About an hour after Erickson took charge of the edger, a piece 4 inches thick, 30 inches wide and 20 feet long, came from the head saw to the edger. Graham took hold of the rear end of it, while Fish took hold of the front end, and they lined it up for entering the edger. It then entered the edger and proceeded but a short distance, when the saws, from some reason, became bound and the piece stopped. What then occurred, resulting in Graham's death, may be told in Fish's own language as follows:

"I lined it up at my end to go in the edger and Mr. Graham was at the other end lining it up and he got the piece lined up far enough so it would go through the edger so it would not bind against the guide. I motioned to Mr. Graham with my fingers, the way I always used them when I was running the edger, but he didn't seem to understand, and at the same time this man Erickson lifted the rollers and Mr. Graham shoved the piece in and I turned around to attend to the rollers where the slab was coming and the piece stopped, so just as soon as I heard the motion of the edger I knew that the piece was stopped and I turned around and he raised the rollers, Mr. Erickson, so I motioned to him with my hand to leave the rollers down, and at the same time motioned at Mr. Graham to keep out of the way, and Mr. Graham was still pushing on the piece of timber to get it through the edger. I suppose that he understood from me to leave the piece of timber alone and he just stood back and sat down on his roller and I motioned to the edgerman to leave his rollers alone and at the same time there was a slab come on the rollers and I turned around to take care of that slab and as I turned around Mr. Erickson lifted the rollers and as he lifted the rollers the cant kicked back and caught Mr. Graham right in the body of the stomach and kicked him about 25 feet from where he stood, from where he set, and killed him instantly."

The piece would not have been thrown back from the edger had not the roller been raised by Erickson while the saws were in motion. The roller should not have been raised by Erickson without stopping the saws, or until he had seen that Graham was away from the rear where the saws were sure to throw the piece if the roller was raised while the saws were in motion. These facts, it seems to us, clearly sustain respondents' right to recover upon the theory that the raising of the roller by Erickson was negligent, that it was the proximate cause of Graham's death, and that Erickson was a vice principal so far as Graham was concerned. *O'Brien v. Page Lumber Co.*, 39 Wash. 537, 82 Pac. 114; *Dossett v. St. Paul & Tacoma Lum. Co.*, 40 Wash. 276, 82 Pac. 273; *Eidner v. Three Lakes Lumber Co.*, 45 Wash. 323, 88 Pac. 326; *Dyer v. Union Iron Works*, 64 Wash. 577, 117 Pac. 387; *King v. Page Lumber Co.*, 66 Wash. 123, 119 Pac. 180; *Lackey v. Big Creek Timber Co.*, 70 Wash. 619, 127 Pac. 190.

So far as Graham's contributory negligence, relied upon by counsel for appellant, is concerned, we think that question could not have been decided against respondent, as a matter of law, in the light of the evidence tending to show Erickson's duty to keep the roller down, his negligence in raising the roller, the safety to all concerned with the roller kept down, and Graham's inexperience. The argument of counsel for appellant deals largely with allegations of negligence in the complaint relative to defects in the machinery and want of care on the part of appellant in employing Erickson as an edgerman, who is alleged to be incompetent and careless. It is true, there was no evidence introduced showing any defect in the machinery, and possibly it might be held, as a matter of law, that recovery could not be had upon the ground of want of care in employing Erickson, assuming that he was a fellow servant; but, even assuming that it could be decided, as a matter of law, that respondents could not recover upon these particular grounds of negli-

gence, that would not lessen their right to recover upon the ground of Erickson's negligence and of his being a vice principal. The cause was tried by counsel, and by the court submitted to the jury, upon this theory, as well as upon the theory that Erickson might be held to be a fellow servant and that appellant was guilty of negligence in employing him, because of his incompetency. We conclude that both the question of appellant's negligence and Graham's contributory negligence were for the jury.

It is contended that the trial court erred in giving to the jury the following instruction:

"If you find that the deceased was killed by being struck with a cant or heavy piece of timber thrown from an edger, and that said edger was old, worn out and defective, and by reason of its age and condition was an improper and dangerous machine to be used, and that the said Eugene G. Graham lost his life, while exercising due care upon his part, by reason of the worn out and defective condition of said edger, if it was worn out and defective, then your verdict should be for the plaintiffs, except as qualified by the instructions as to fellow servant, assumption of risk and contributory negligence which I will give you later."

This instruction was pertinent to an issue raised by the pleadings, but there was no evidence whatever introduced upon the trial tending to show any defect in the machinery. It is claimed to have been prejudicially erroneous in that particular, in that it presented to the jury an issue upon which it could in no event make a finding, for want of evidence. That the instruction was technically erroneous may be conceded; but, in view of the whole record of the trial, which plainly shows that counsel for respondents were not resting their claim upon any defect of machinery, but upon the negligence of Erickson as a vice principal and also upon the negligence of appellant in employing Erickson, and his incompetency, in the event he should be held to be a fellow servant with Graham, we think this instruction did not constitute such prejudicial error as to call for a new trial. A

similar claimed error was involved in *Chesapeake & O. R. Co. v. Burke*, 147 Ky. 694, 145 S. W. 370, Ann. Cas. 1913 D. 208, where an instruction was given touching alleged negligence upon which no evidence had been introduced upon the trial. The court there said:

"One criticism of this instruction is that it included in the persons chargeable with the safe transportation of appellee the persons in charge of the train. The ground of this objection is that there was no negligence shown to exist on the part of any of the persons operating the train. Without going into the question whether the engineer and persons in charge of the train were negligent or not, we deem it a sufficient answer to the criticism to say that in no possible view of the case that we can conceive of was the inclusion of the operatives of the train prejudicial to the appellant. All of the evidence in the case was directed to the condition of the track, and it is perfectly plain that the verdict of the jury was due entirely to their conviction that the evidence showed that the company had not exercised the care required of it in the construction and maintenance of its track."

It may be noted here that, taking the instructions as a whole, the jury were plainly given to understand that it must rest its conclusions entirely upon evidence introduced upon the trial, though not specifically so stated in this instruction. It seems quite clear to us that the jury were not influenced by the giving of this technically erroneous instruction, and that it was, therefore, without prejudice. *Story v. St. Louis Transit Co.*, 108 Mo. App. 424, 83 S. W. 992; *South Chicago City R. Co. v. Dufresne*, 200 Ill. 456, 65 N. E. 1075; *City of South Omaha v. Fennell*, 4 Nebr. (Unof.) 427, 94 N. W. 632; *Burns v. Goddard*, 72 S. C. 355, 51 S. E. 915; 38 Cyc. 1639.

In *Gray v. Washington Water Power Co.*, 30 Wash. 665, 71 Pac. 206, Justice Dunbar, speaking for the court, said:

"An appellate court will not be justified in reversing a judgment where an error has been committed if it further appears from the whole record that such error is immaterial, or, in other words, if the record, as a whole, overcomes the

presumption of prejudice which is established by the commission of error, and shows affirmatively that no substantial rights of the appellant have been injuriously affected."

See, also, *Foster v. Seattle Elec. Co.*, 35 Wash. 177, 76 Pac. 995; *McKay v. Anderson Steamboat Co.*, 51 Wash. 679, 99 Pac. 1030.

Another instruction given by the court to the jury which is insisted by counsel for appellant to be erroneous, is as follows:

"You are instructed that, if the person placed in charge of the edger had full authority to direct and control the actions and movements of the deceased at or before the time of his death, and that it was the duty of the person placed in charge to operate the edger to ascertain and know that the said deceased was in a safe position before releasing from the machine the stick of timber contained therein; and if the person placed in charge of the edger failed to see whether the deceased was in a safe position and negligently released said timber from said edger and that the death of the deceased was caused by the negligence of the person placed in charge of such machine to know and ascertain that the said deceased was in a place of safety before releasing said timber, then the deceased and the said person operating the said edger were not fellow servants and your verdict should be for the plaintiffs."

Counsel argues that this instruction "excludes any reference to the defense of contributory negligence and directs the jury to find for the plaintiffs if the jury was satisfied that Graham and Erickson were not fellow servants." Considered entirely apart from other instructions given by the court, this instruction would possibly be subject to the criticism made against it. The court fully and fairly instructed the jury touching Graham's possible contributory negligence as being the proximate cause of his death, concluding such instruction by plainly telling the jury that, if such contributory negligence was the proximate cause of his death, respondents could not recover in this action. We think the language of the instruction here complained of was under-

stood by the jury in the light of the instructions upon the subject of contributory negligence.

It is finally contended that, in any event, the verdict is excessive and manifestly exceeds the loss suffered by respondents in so far as such loss can be measured in dollars and cents. We are constrained to agree with this contention. Graham, at the time of his death, was about 33 years old, and had a life expectancy of about 33 years. We have seen that he was, at the time, earning $2.75 per day. The evidence indicates quite clearly that this was the maximum of his earning power. He was little else than a common laborer, and the evidence plainly indicates that his earnings had previously been even less than this. The verdict, as we have noticed, was for $17,500. Legal interest upon this sum alone would yield a greater annual income than the earning power of Graham, even if he were employed every working day of the year; and this, without diminution of the principal in the least. We are of the opinion that in no event would we be warranted in allowing a judgment to stand in this case in favor of respondents in excess of $10,000, and that the judgment must be set aside for this reason. *Ohrstrom v. Tacoma*, 57 Wash. 121, 106 Pac. 629; *Walters v. Spokane International R. Co.*, 58 Wash. 293, 108 Pac. 593, 42 L. R. A. (N. S.) 917.

Some other errors are noticed in the brief of counsel for appellant, but we think they are clearly without prejudice and do not call for discussion.

The judgment is set aside, and the cause remanded to the trial court with directions to grant appellant a new trial unless, within thirty days after the remittitur is sent down, respondents consent to the rendition of judgment in their favor in the sum of $10,000, in which event judgment shall be entered accordingly.

CROW, C. J., FULLERTON, and MOUNT, JJ., concur.