[No. 32434. Department One. October 1, 1953.]

LEGION C. KRAMER, *as Administrator, Respondent,* v. PORT-LAND-SEATTLE AUTO FREIGHT, INC., *et al., Appellants.*[1]

[1]Reported in 261 P. (2d) 692.

*Dale W. Read* (*Vergeer & Samuels,* of counsel), for appellants.

*Simpson & Simpson,* for respondent.

WEAVER, J.—This is an action for damages for wrongful death. Defendants appeal from a judgment against them, based upon a jury verdict, in the sum of $667.25 special damages and $50,000 general damages, for the death of Helen C. Kramer.

The issue of liability is not presented on this appeal. We need not, therefore, expand upon the occasion giving rise to plaintiff's cause of action.

Helen C. Kramer died as a result of a collision between an automobile, driven by her husband, Legion, and a truck and semitrailer. The truck and trailer were owned by defendant Portland-Seattle Auto Freight, Inc., and driven by its employee, defendant Wochnick. Three of the Kramer children (Legion, Jr., age six; Calvin, age four; and Nancy Sue, age seven months) also died as a result of the collision. Legion Kramer and their minor son, Donald, age two years and five months, were injured but survived the collision.

Three separate actions were commenced. Since they were consolidated and tried together, it is necessary that they be described.

In the first action (cause No. 28186), Legion C. Kramer, individually, recovered special damages for the loss of his automobile, hospital and medical expense, loss of wages, funeral and burial expense of the three children, and $8,000 general damages for his injuries. However, the jury denied general damages for the wrongful death of his children. There is no appeal from this judgment.

The second action (cause No. 28187), for damages for the wrongful death of Helen C. Kramer, was brought in the name of Legion C. Kramer, as administrator of his wife's estate, on behalf of himself and his minor son, Donald. It is from the judgment entered upon the verdict in this case that defendants appeal.

The third action (cause No. 28188) was brought by Legion C. Kramer as guardian of his minor son, Donald, for injuries suffered by Donald. It appears in briefs of counsel that the jury returned a verdict for the plaintiffs in each of the three cases. The record, however, does not disclose the amount of this verdict. There is no appeal from this judgment.

Appellants' first three assignments of error are directed to the admission in evidence of eight photographs. In their fourth and fifth assignments, appellants contend that the trial court erred (a) in denying their motion for a new trial, and (b) in entering judgment for $50,667.25. The fourth and fifth assignments are supported by the argument that the verdict is excessive.

■ Exhibits 6, 8, 9, and 10 are accurate photographic representations of the truck and the automobile taken immediately following the accident. The speed of the truck and the damage to the car (alleged to have been a total loss) were placed in issue by the pleadings. These pictures were pertinent to the issues. They depict the force of the impact. They show the damage to the car. In *Cady v. Department of Labor & Industries*, 23 Wn. (2d) 851, 863, 162 P. (2d) 813 (1945), this court said:

"This court has heretofore said that the practice of admitting photographs is to be encouraged as an aid to the comprehension of physical facts, because such evidence usually clarifies some issue and gives the jury, and the court, a clearer comprehension of the physical facts than can be obtained from the testimony of witnesses."

This purpose was accomplished by these photographs. The trial court did not err in admitting them in evidence.

■ Admission of a picture of the front portion of appellants' truck is assigned as error because it was taken the

day following the accident, after the truck had been moved. Witnesses testified that no material damage had been done to the truck by righting and moving it. This court said, in *State v. Cyr,* 40 Wn. (2d) 840, 847, 246 P. (2d) 480 (1952),

"Whether a photograph is sufficiently identified as a proper representation is a preliminary question to be determined by the trial court, and the determination of that question lies largely within its discretion. Its ruling thereon will not be disturbed except for abuse of discretion. (Citing cases)."

We have examined the testimony and the photograph. We find no abuse of discretion.

■ Appellants assign error to the admission in evidence of three snapshots of Helen C. Kramer and her four children. In the action brought by Legion C. Kramer in his individual capacity (cause No. 28186) for damages by reason of the death of the three children, their age, physical condition, and mental development were material facts to be proved. The jury was instructed that "the child's health, his mental and physical capacity, both present and prospective" were matters for their consideration in determining damages, if any. The pictures were relevant and competent. They tended to prove a material issue in one of the cases consolidated for trial. *City Ice Delivery Co. v. Turley,* 44 Ga. App. 32, 160 S. E. 517 (1931).

Appellants

". . . concede that probably the ruling as to any one photograph, considered solely by itself, was possibly not sufficiently serious an error to constitute reversible error."

Appellants urge, however, that the admission of the three sets of photographs (to which appellants assigned error), together with certain incidents of the trial (to which appellants did not assign error),

". . . all had the obvious effect of arousing extreme passion, sympathy and emotion in the minds of the jurors and resulted in a verdict in this case which was so grossly excessive as unmistakably to indicate that the verdict must have been the result of passion or prejudice."

We have already held each photograph admissible in evidence. The sole question remaining, then, is whether this court will disturb the jury verdict of $50,000.

Plaintiff, as the administrator of the estate of Helen C. Kramer, commenced this action for the benefit of *two survivors,* himself as widower and their minor son, Donald, under the wrongful death statutes. Rem. Rev. Stat., § 183 [*cf.* RCW 4.20.010]; Rem. Rev. Stat., § 183-1 [*cf.* RCW 4.20.020].

 The amount of damages to be assessed is a matter for determination by the jury under appropriate instructions. The general statute (Rem. Rev. Stat., § 366, RCW 4.44.450) provides that the jury shall assess the amount of the recovery. The wrongful death statute provides:

"In every such action the jury may give such damages as, under all circumstances of the case, may to them seem just." Laws of 1917, chapter 123, § 2, p. 495 (Rem. Rev. Stat., § 183-1 [*cf.* RCW 4.20.020]).

 It is fundamental, in cases such as this, that the measure of damages is the pecuniary loss sustained by the statutory beneficiaries for whose benefit the action is prosecuted. *Woodbury v. Hoquiam Water Co.,* 138 Wash. 254, 244 Pac. 565 (1926). It is at once apparent, however, that such pecuniary loss is difficult of precise proof, and is, in a measure, uncertain. This is especially true when the action involves the death of one who is not a wage earner and whose death deprives a beneficiary of intangibles difficult of translation into terms of money. Nevertheless, the damage and loss are real, and they are compensable under the statutes. In *Ticknor v. Seattle-Renton Stage Line,* 139 Wash. 354, 358, 247 Pac. 1, 47 A. L. R. 252 (1926), involving an action for damages for wrongful death, this court said:

"In the present kind of a case, by its very nature, the amount of damages cannot be fixed with mathematical certainty. Primarily, the jury must be given considerable latitude in fixing the amount."

In *Bigelow v. RKO Radio Pictures, Inc.,* 327 U. S. 251, 265, 90 L. Ed. 652, 66 S. Ct. 574 (1946), the court said:

"The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created. . . . 'The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery' for a proven invasion of the plaintiff's rights."

It is necessarily within the judgment of the jury to assess damages as "to them seem just," under the evidence and "circumstances of the case"; subject, of course, to certain judicial control.

It is but a conclusion to say that a jury's verdict is excessive. Before the conclusion can be reached, it must be supported by the record. Appellants reach this conclusion by urging that "the verdict must have been the result of passion and prejudice." We look, therefore, to the record.

This case is unusual in at least one respect: The record of the consolidated trials affirmatively shows that the jury was not influenced by passion and prejudice generated by the facts.

Other than a reference to the admission of the photographs, appellants assign error to nothing, except the *amount* of the verdict, from which a conclusion of passion and prejudice might be drawn. It is obvious, however, that the death of the three minor children is claimed as the basis of such a conclusion.

In cause No. 21816, brought by Mr. Kramer for damages for the wrongful death of the three children, the court instructed:

"You are instructed that should you decide from the evidence that Legion C. Kramer is entitled to recover damages for the death of his three minor children, you will give consideration to the following as a measure of the damages to be awarded in the case of each child. You shall determine the value of the services of each child from the date of the injury which caused the death until such child would have attained the age of majority, less the cost of such child's support and maintenance to his father during this interval. In determining the value of the deceased child's services, you must take into consideration the child's health, his mental and physical capacity, both present and prospective, as well

as the situation of his parent. . . . In determining the value of a deceased child's services, *you should not consider the elements of distress, sorrow, or mental suffering that the father may have suffered* by reason of the death of these children." (Italics ours.)

██ No exception was taken to this instruction. It became the law of the case. The jury acted under it, and denied general damages for the deaths of the three minor children.

However, the jury returned the verdict here attacked under the following instruction:

"You are instructed that in the event you find that Legion C. Kramer, in his capacity as administrator of the estate of Helen C. Kramer, is entitled to recover for her death, his recovery will be for the benefit of himself as the surviving spouse and for the benefit of Donald Kramer, the surviving minor son.

"In determining the amount to be awarded Legion C. Kramer as administrator, you may award recovery for any pecuniary loss that a preponderance of the evidence shows the surviving husband has sustained and will sustain by reason of his wife's death, and you may take into consideration as elements of damage the loss of love, affection, care, services, companionship, society and consortium, if any, sustained by him by reason of the death of his wife; and also such sums, if any, that he has been obliged to pay and that he with reasonable certainty may be obliged to pay in the future for the care of his minor son. You may further award recovery for any pecuniary loss that a preponderance of the evidence shows the surviving son; Donald Kramer, has sustained by reason of his mother's death, and you may take into consideration as elements of damage the loss of the love, care, protection, services, guidance and moral and intellectual training and instruction, if any, sustained by Donald Kramer by reason of the death of his mother."

No exception was taken to this instruction either. It also became the law of the case. For the benefit of the husband, and for the benefit of the minor son, the jury returned a combined verdict of $50,000.

In denying appellants' motion for a new trial, the lower court said:

"The court desires to point out, in addition, that the jury, . . . strictly followed Instruction No. 12 [quoted *supra*]

as to the measure of damages for the death of the three minor children and allowed no recovery by way of general damages for their deaths; *and that the jury thereby demonstrated to this court that it made its verdict without passion or prejudice and that it made an unusual effort to follow the instructions of the court literally and objectively.*" (Italics ours.)

■ We agree with the trial court; the record affirmatively refutes the claim that passion and prejudice permeated the deliberations of the jury.

In *Anderson v. Dalton,* 40 Wn. (2d) 894, 898, 246 P. (2d) 853 (1952), this court said:

"In the absence of passion or prejudice, however, there would seem to be no logical basis for granting a new trial unconditionally on the ground that a judgment is excessive, and we find no case in which we have granted a new trial unconditionally under such circumstances."

The trial court did not abuse its discretion when it denied appellants' motion for a new trial.

Did the trial court abuse its discretion in refusing to reduce the amount of the verdict? Should this court, *even though the jury was not influenced by passion and prejudice,* order the amount of the judgment reduced or grant a new trial in the alternative, if the reduction is not accepted by respondent? Can it be said, as a matter of law, under the facts, that the verdict carries its own death warrant, solely by reason of its size?.

This court has reduced verdicts for damages for wrongful death (or, in the alternative, granted a new trial) on at least nine occasions when passion and prejudice were either not discussed or were found not to exist. *Walker v. McNeill,* 17 Wash. 582, 50 Pac. 518 (1897); *Vowell v. Issaquah Coal Co.,* 31 Wash. 103, 71 Pac. 725 (1903); *Creamer v. Moran Brothers Co.,* 41 Wash. 636, 84 Pac. 592 (1906); *Ohrstrom v. Tacoma,* 57 Wash. 121, 106 Pac. 629 (1910); *Walters v. Spokane International R. Co.,* 58 Wash. 293, 108 Pac. 593 (1910); *Delaski v. Northwestern Improvement Co.,* 70 Wash. 143, 126 Pac. 421 (1912); *Rochester v. Seattle, Renton & Southern R. Co.,* 75 Wash. 559, 135 Pac. 209 (1913); *Graham v. Allen & Nelson*

*Mill Co.*, 78 Wash. 589, 139 Pac. 591 (1914); *Thompson v. Fiorito,* 167 Wash. 495, 9 P. (2d) 789, 12 P. (2d) 1119 (1932).

In none of these cases was a clear principle announced or a criterion established by which this issue might be tested objectively. Some cases make a cursory reference to the facts; others do not. The conclusion seems to rest in the opinion of the court.

Chancellor Kent, years ago, announced the following rule:

"The question of damages was within the proper and peculiar province of the jury. It rested in their sound discretion, under all the circumstances of the case, and unless the damages are so outrageous as to strike every one with the enormity and injustice of them, and so as to induce the court to believe that the jury must have acted from prejudice, partiality or corruption, we cannot, consistently with the precedents, interfere with the verdict. It is not enough to say that in the opinion of the court, the damages are too high, and that we would have given much less. It is the judgment of the jury, and not the judgment of the court, which is to assess the damages in actions for personal torts and injuries. . . . The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess." *Coleman v. Southwick,* 9 Johnson (N.Y.) 45, 6 Am. Dec. 253 (1812).

No phase of the law of damages is in such an unsatisfactory state as that concerned with the rule governing damages for wrongful death. A statute such as ours creates the right of action, but prescribes no measure of recovery other than that which seems just to the jury.

■ The conclusion reached by an appellate court in reviewing the excessiveness of a verdict for damages for wrongful death, in the absence of passion and prejudice, must be the result of tipping the balance between two sets of factors.

On the one hand, the following must be considered: Each cause depends, to a large extent, upon its own facts and

circumstances. The verdict must be compensatory of a pecuniary loss. *Walters v. Spokane International R. Co.*, 58 Wash. 293, 108 Pac. 593 (1910). It can be substantial (*Atkeson v. Jackson Estate*, 72 Wash. 233, 130 Pac. 102 (1913); *St. Germain v. Potlatch Lbr. Co.*, 76 Wash. 102, 135 Pac. 804 (1913); *Skeels v. Davidson*, 18 Wn. (2d) 358, 139 P. (2d) 301, 149 A. L. R. 225 (1943)) but not out of proportion to actual damages. *Halverson v. Seattle Electric Co.*, 35 Wash. 600, 77 Pac. 1058 (1904). The amount of the damage is within the discretion of the jury, under proper instructions. The jury is given considerable latitude in making such determination as to it seems just. *Aronson v. Everett*, 136 Wash. 312, 239 Pac. 1011 (1925); *Ticknor v. Seattle-Renton Stage Line*, 139 Wash. 354, 247 Pac. 1 (1926). The subject matter being difficult of proof, it cannot be fixed with mathematical certainty by the proof. Once the determination is made, an appellate court will give great weight to, and is reluctant to interfere with, the jury's verdict. *Kellerher v. Porter*, 29 Wn. (2d) 650, 189 P. (2d) 223 (1948).

On the other hand, the balancing factor is the conscience of the appellate court, when there is an affirmative showing that passion and prejudice played no part in the jury's determination. Is the amount flagrantly outrageous and extravagant? Is it unjustified in the light of the evidence? Does it disclose circumstances foreign to proper jury deliberations? If it is and does, then it can be said to shock the sense of justice and sound judgment, and the verdict of the jury is excessive.

Helen C. Kramer was nearly thirty years of age at the time of her death. Her health was described as being above average. She had attended grade school, high school, and two years of college. She was a good housekeeper and a devoted wife. She was diligent, devoted, and effective in the care and training of her four children. She had a life expectancy of 37.74 years.

Legion C. Kramer was thirty years of age and had about the same life expectancy. They had been married for eight years, including the final two and one-half years he was

attending engineering school. At the time of the accident, he was employed as a civil engineer, earning four hundred dollars a month.

The loss suffered by the husband is separate and distinct from the loss suffered by the two and one-half year old son. The jury was not requested to make, nor did it make, an apportionment of the amount of the verdict between the widower and the son.

The evidence showed that it would cost between fifty and one hundred dollars a month to secure a housekeeper to take care of Donald until he reached majority. The jury was entitled to fix the amount at one hundred dollars a month. This item alone would amount to $22,200. In addition, the jury was instructed that it might take into consideration as elements of the husband's damages, the loss of "love, affection, care, services, companionship, society and consortium" suffered by him. He has been deprived of the services and companionship of his wife for more than thirty-seven years.

The pecuniary loss to the minor son is more nebulous but just as real. The jury was entitled to take into consideration in fixing the amount, the loss of "love, care, protection, services, guidance and moral and intellectual training and instruction" suffered by him. See *Pearson v. Picht*, 184 Wash. 607, 52 P. (2d) 314 (1935). This loss may follow him beyond the period of minority. His pecuniary loss, suffered by reason of the wrongful death of his mother, does not necessarily end with his arriving at the age of twenty-one years. It was for the jury to say whether or not damages may be recovered therefor. *Lund v. Seattle*, 163 Wash. 254, 1 P. (2d) 301 (1931).

It is presumed that the jury endeavored to follow, and we believe it did follow, the trial court's instructions. Hence, we hesitate to give a different weight to a verdict fixing damages than we would to any question of fact determined by a jury (*Atkins v. Churchill*, 30 Wn. (2d) 859, 194 P. (2d) 364 (1948)) unless the amount be so outrageous that it shocks the sense of justice and sound judgment.

 The amount of the combined verdict for the two injured parties is high, especially when compared with decisions of this court a generation ago. However, as we said in *Kellerher v. Porter, supra*:

"We are also keenly cognizant of the fact that the purchasing power of money is less today than it was ten, fifteen, or twenty years ago."

In fact, the purchasing power of money is now considerably less than half what it was a few years ago.

In the light of all of the circumstances, we cannot say that the amount of the verdict exceeds any realistic appraisal of the damages suffered by the two parties in whose behalf this action was brought.

The judgment is affirmed.

GRADY, C. J., MALLERY, HILL, and OLSON, JJ., concur.

