## GEBUS v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.

(132 N. W. 227.)

**Evidence — order of proof — exclusion — harmless error.**

1. In an action for damages alleged to have been caused by the negligence of defendant railroad company, in that its platform was overcrowded with baggage, express and freight; that said platform was insufficiently lighted, and that the deceased while moving along its platform tripped over some obstruction, and fell upon the track in front of a moving locomotive, *held* that evidence sought to be introduced showing the condition of the platform for a considerable length of time prior to the accident was properly excluded as not

Note.—How near the main transaction declarations must be made in order to constitute part of the *res gestæ*, see note in 19 L.R.A. 733.

in the proper order of proof, where no proof had been made of the manner
in which deceased met death, and no testimony introduced tending to prove
that the accident was caused by reason of the condition of the platform. And,
further, that where this testimony was subsequently admitted, if there was
error in the prior ruling, it was cured by such admission.

**Evidence — res gestæ — declarations — sufficiency to go to jury.**

2. *Held,* that a statement made by deceased to a physician, between thirty
minutes and one hour after an accident occurred, and made at a hospital some
distance from the place of the accident, after deceased regained consciousness,.
was not a part of the *res gestæ,* where the physician stated that deceased
might have given him his name at the platform before being removed to the
hospital, and that he told where he was from and where he was going before
making the statement in question. And where it does not appear that the
statement was volunteered, but may have been in response to questions asked,.
and that it was not in the nature of an exclamation forced by shock or the
injury, and that it does not appear to have been made even under stress or
nervous excitement produced by the accident. *Held,* further, that such state-
ment, even though admitted in evidence, was not sufficient proof as to the
cause of the injury to make a question for the jury, there being no other evi-
dence in the case tending to prove such fact, such statement being as follows:
"I was going to Portal; I was going up the platform; it was dark and I
either stumbled or was crowded off the platform."

**Recalling witness — discretion as to excluding testimony.**

3. Where a witness has been called twice, and each time examined under
direct, cross, and redirect examination, *held,* that it was within the discretion
of the court, and therefore was not error, to exclude his testimony upon being
called back the day following and being asked questions which he had testified
to fully theretofore, where it is not shown that his answers would have been
different, or that he desired to change the same in any particular.

Opinion filed June 13, 1911.

Appeal from District court, Ward county; *E. B. Goss,* J.

Action by Mary A. Gebus against the Minneapolis, St. Paul, & Sault
Ste. Marie Railway Company. Judgment for defendant, and plain-
tiff appeals.

Affirmed.

*Chas. D. Kelso, L. J. Palda, Jr., C. D. Aaker,* and *John E. Greene,*
for appellant.

*John L. Erdall (Alfred H. Bright,* of counsel), for respondent.

Fisk, Special Judge.   This action was brought by Mary A. Gebus, the widow of J. A. Gebus, deceased, to recover damages for the death of said J. A. Gebus.   The deceased was killed on the 15th day of August, 1906, at the passenger station by respondent in the city of Minot, North Dakota, by being struck by a passenger train of the respondent as it was about to stop at said station, at 9:10 o'clock P. M. It is claimed that the death of deceased was caused by the negligence of respondent, in that its platform was overcrowded with baggage, express and freight; that said platform was insufficiently lighted; and that the deceased while moving along this platform tripped over some obstruction and fell upon the track in front of the moving locomotive.   At the close of plaintiff's case in the lower court, the court directed a verdict for defendant and respondent on its motion.   Motion for a new trial was denied, and the appeal is from the judgment entered and from the order denying a new trial.

The appellant has set forth twelve assignments of error, the first ten of which relate to rulings of the court rejecting testimony offered by her, the eleventh to the directing of the verdict, and the twelfth to the denial of appellant's motion for a new trial.

These assignments can all be covered by four propositions, as follows:

(1) Was it error for the court to exclude the testimony of certain witnesses with respect to the condition of the platform at the passenger station of the defendant corporation at Minot, North Dakota, as to its being unduly encumbered with freight and baggage, and insufficiently lighted, for a considerable length of time prior to the accident?

(2) Was it error for the court to exclude the testimony sought to be introduced, and the proof offered by the plaintiff as to statements made by the deceased to the physician in charge, immediately after regaining consciousness and within a very few hours after the accident occurred?

(3) Was it error for the court to refuse the evidence sought to be introduced through the testimony of witness Ziegenbien, bearing upon the particular incidents surrounding the accident, upon a re-examination of the witness on the day following his first appearance on the witness stand?

(4) Was it error for the court to instruct a verdict for the defendant?

At the beginning of the trial, plaintiff attempted to prove by the witnesses Hyland and Ziegenbien what the usual condition of the said platform was prior to the day of the accident, and also by the last-named witness, that he had at one time prior to the accident made complaint to the agent of the defendant company about not having its lights lit at the station. This testimony was excluded by the court and assignments numbered 1, 2, 3, and 8 are based upon the court's rulings thereon. At the time this testimony was offered, there had been no proof made of the manner in which deceased met death, nor had any testimony been introduced tending to prove that the accident was caused by reason of the condition of the platform. This testimony was certainly not offered in the proper order of proof, and we cannot say that the court erred in rejecting it. Subsequently during the trial this evidence was admitted, and if there was any error in the court's prior ruling it was cured by such admission. Jonasen v. Kennedy, 39 Neb. 313, 58 N. W. 122; Young v. Otto, 57 Minn. 307, 59 N. W. 199.

The question asked by proposition No. 2 is, we think, the most important one in the case, although we do not deem the answer to it, even should it be in the affirmative, decisive of the case, as shall be seen hereafter.

The plaintiff sought to prove by the witness Dr. Windell that the deceased had made certain statements to such witness at the hospital some time after the accident occurred, relating to the manner in which it occurred. This testimony was excluded by the court, and assignments numbered 4, 5, and 6 are based thereon. Dr. Windell testified in part as follows: "I was summoned to the depot at that time, and when I got there, found the young man injured. There were other physicians attending to the young man. He was afterwards taken to the hospital and I went with him. I then made an examination, and I think Dr. Newlove was there. The young man was totally unconscious; he was delirious from the time we left the depot until we got to the hospital, and while attending him at the hospital he regained consciousness at times, and when he first regained consciousness said something to me about the accident. This was probably half an hour after I found him at the depot, I couldn't say definitely. I had given him two

hypodermics of morphine before being taken to the hospital. Prior to the time he became conscious he talked to me, he was muttering all the way up on account of the pain, and talked in a delirious way, and shortly after arrival at the hospital he made this statement. I remember him complaining when he was on the platform and in a delirious condition. From the time I got to the platform and the time he was removed to the hospital was five or ten minutes. I remember getting his name, but could not say whether it·was there (meaning platform) or at the hospital. He might have given his name at the platform. I think he told me where he was from or where he was going, before he made the statement in regard to the accident. I couldn't say whether he volunteered the statement or whether it was in response to a question. I asked him questions. It might have been in response to questions. Considerable of what he said may have been in response to questions I put to him. He was quite rational when he made the statement."

Is a statement made under these conditions a part of the *res gestæ* and therefore admissible as such? If so, then the question propounded in proposition No. 2 must be answered in the affirmative. We think not, however. The statement was not made immediately after the accident nor at the place of the accident. It was made at the hospital about one half hour after deceased reached there. Dr: Windell testified that he might have learned the man's name, where he came from, and where he was going to at the depot. He also admitted that what deceased said may have been largely in response to questions addressed to him. It does not appear that the statement was volunteered by deceased, nor was it in the nature of an exclamation forced from him by shock or the injury. It does not appear to have been made even under stress or nervous excitement produced by the accident, and the statement was certainly not a spontaneous explanation of the real cause. These are some of the elements which must be present in order to make admissible as a part of the *res gestæ*, statements or declarations. Jones, Ev. 2d ed. §§ 344 et seq., and cases cited; 3 Wigmore, Ev. §§ 1747 et seq., and cases cited.

However, conceding for the purpose of argument that the statement was admissible as a part of the *res gestæ*, what would its effect be? Plaintiff offered to show by Dr. Windell that at the hospital, shortly after or immediately after the deceased regained consciousness, he

stated: "I was going to Portal. I was going up the platform; it was dark and *I either stumbled or was crowded off the platform.*" Such statement, even if received as evidence, was not sufficient proof as to the cause of the injury to make a question for the jury's consideration. Deceased by said statement admitted that he might have been crowded off the platform. He didn't know how the accident happened, and such statement was only in the nature of a guess or conjecture. He might have been walking in a crowd and accidentally have been shoved off the platform by some one unbeknown to him.

In the case of Balding v. Andrews, 12 N. D. 267, 96 N. W. 305, this court used the following language in speaking of the proof necessary to sustain an allegation of negligence: "It is not asking too much of a plaintiff when he alleges negligence, that he be required to prove it. When he claims damages because of fire, which he avers was started through the neglect to observe due care and caution, his proofs must establish the charge. Mere speculation or possibility will not do."

Aside from this statement which plaintiff sought to prove by the witness Windell, there was no testimony introduced by her tending to prove the cause of the accident, and we therefore repeat that, even though proof of such statement had been admitted, still there was not sufficient evidence as to the cause of the injury to make a question for the jury's consideration.

Assignments of error numbered 7, 9, and 10 relate to rulings of the court in excluding evidence of the witness Zeigenbien, upon his being recalled the second day. These assignments are covered by proposition No. 3. It appears that the witness had previously been called to the witness box twice, and on both occasions had undergone a direct, cross, and redirect examination, and that he had testified fully as to what he saw of the accident during such examination. He testified in part as follows: "The train was pulling in when I was about 12 feet from the depot, and I heard an outcry which drew my attention, sounding like a party hollered for help. I heard an outcry and supposed it was the party that fell,—I don't know; it was dark, and I turned around to look. Just before hearing the outcry, I saw parties coming toward the depot, and just after I saw a party going over toward the track from the platform, and it looked to me as though he gathered himself to come back, at least to approach back towards the platform as the cowcatcher threw

him and the party behind grabbed him. . . . Just at the time I heard the outcry, I saw the man fall by the trunk; . . . The man went onto the tracks sideways, as I remember it, but could not say as to the exact motions he made, and I could not say I could see him when he struck the ground, there was a party right in back of him. . . . When I heard someone holler, I looked that way, and it appeared he was falling out on the track sideways. That is the first I saw of the accident. I saw the figures approaching, and the first I saw of the accident was when I heard the outcry, and it was one of the two figures I saw coming up the platform, and it was right there where the trunks were standing close to the edge of the platform."

After being recalled the second day, the following three questions were asked and objections thereto sustained by the court, to wit: "I wish you would tell the jury again just what you saw happen immediately before and at the time of the injury. . . . State to the jury just how it appeared to you when he fell off or started to fall off. . . . At the time you heard the outcry, tell the jury, or stand down and illustrate to the jury, just what position you saw this person in who was tumbling over onto the track."

Inasmuch as this witness had previously testified to the same matters covered by these questions, and his answers to the same would necessarily mean a repetition of his former evidence, we see no error, or prejudice to plaintiff, in the court's ruling. There was nothing to indicate that his answers would have been different, or that he desired to change the same in any particular. It was within the discretion of the court to exclude the same.

From what has heretofore been said, no comment is deemed necessary in answering proposition No. 4 in the negative.

The judgment and order are affirmed.

MORGAN, Ch. J., and GOSS, J., not participating. KNEESHAW and FISK, District Judges, sitting by request.