[No. 12638.  Department One.  August 16, 1915.]

WILLIAM P. VANORDSTRAND, *Administrator etc., Appellant,*

v. NORTHERN PACIFIC RAILWAY COMPANY, *Respondent.*[1]

MASTER AND SERVANT—INJURIES TO SERVANT—VICE PRINCIPAL—
ACTS OUTSIDE SCOPE OF EMPLOYMENT.  A railway call boy, instruct-
ing a new call boy in the matter of his duties in calling a train
crew in town about one mile distant up the track, acts outside the
scope of his employment, and not as a vice principal, when he di-
rected the new boy to jump on a train going to the town and to
jump off while the train was in motion, where call boys were pro-
hibited by rule from riding upon trains and the yard foreman had
particularly cautioned the new boy against jumping on or off trains
in going to town.

SAME—FELLOW SERVANTS—FEDERAL EMPLOYERS' LIABILITY ACT—
SCOPE OF EMPLOYMENT.  The Federal employers' liability act making
employers liable to their employees for the negligence of fellow
servants, applies only to acts of the fellow servants done in the
scope of their employment.

SAME — FELLOW SERVANT — SUPERVISION OVER WORK.  A fellow
servant does not become a vice principal because, for the moment,
he assumes to give directions as to the method of doing the work.

Appeal from a judgment of the superior court for Pierce
county, Chapman, J., entered October 9, 1914, in favor of
the defendant, notwithstanding the verdict of a jury rendered
in favor of the plaintiff, in an action for wrongful death.  Af-
firmed.

*Green & Chester,* for appellant.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte,* for re-
spondent.

MORRIS, C. J.—Action under the Federal employers' lia-
bility act, to recover for the death of a minor son.  Appeal
from judgment notwithstanding the verdict.  No question is
raised as to the timeliness of the motion upon which the
judgment was granted, as the entry of judgment upon the

[1]Reported in 151 Pac. 89.

verdict was deferred by order of the court until after filing and ruling upon the motion for judgment.

Harry Vanordstrand, the deceased, was employed by respondent as a call boy in its Auburn yards, some four or five days prior to his accidental death. Upon being employed, he was placed under the direction of another call boy named Ward, who was directed by the yard foreman to instruct Vanordstrand what his duties were, and how to perform them. The Auburn yard, where the call boys assembled, was about a mile from town, and the duty of the call boys was to go into town when a train was about to be made up and call the crew which was to take it out. It was necessary to instruct new boys where the different members of the crews lived, and how to obtain their acknowledgments of call by requiring signatures in the call book. This was what Ward was teaching Vanordstrand, and what he was directed to teach him by the yard foreman.

On the night of the fatal accident, Ward, Vanordstrand, and a third boy left the yard office at about ten o'clock p. m., to go up town and call a crew. A short distance up the track and headed in the direction of town was a Great Northern passenger train, which started to pull out as the boys came up. The three boys jumped on the train intending to ride to the town station, assuming that the train would stop on reaching the station. The vestibule doors of the coaches were all closed, and the only way the boys could get on the train was by standing on the steps and holding onto the hand holds. Ward jumped on the rear steps of one car, Vanordstrand on the front steps of the following car, with Taylor, the third boy, on a car further back. When the train reached the Auburn station, it was traveling at about twenty miles an hour, and observing it would not stop, the boys jumped. Vanordstrand was fatally injured.

Appellant contends that Ward stood in the relation of vice principal to Vanordstrand, and directed him to board the train and to jump off, and because of this relation, liability

flows to respondent. This record does not support such a contention. The fact that Ward was instructing Vanordstrand in his duties as call boy would not make him a vice principal in giving instructions to jump on or off the train, since that was no part of his duty. If he gave any such order, it was clearly without the scope of any authority conferred upon him, either directly or by way of inference. Call boys were prohibited by rule from riding upon trains, and the yard foreman of respondent, who employed Vanordstrand, testified that, on account of the friendly relations existing between himself and the Vanordstrand family, he particularly cautioned Vanordstrand against jumping on or off trains in going to or from town.

The facts bring this case within the rule announced in *Reeve v. Northern Pac. R. Co.*, 82 Wash. 268, 144 Pac. 63, L. R. A. 1915 C. 37, where, in speaking of the application of the Federal employer's liability act to cases of this character, it was said:

"Its purpose was not to render the carrier liable in all instances and under all circumstances, where one employee of a carrier is injured by the careless and negligent acts of another. It is not enough that the negligent act causing the injury occur during the existence of the employment, nor is it enough that it occur during the hours the employees are required to be on duty. To render the carrier liable, the negligent act must occur while the employees are doing some act required in the prosecution of the carrier's business."

Citing White's Personal Injuries on Railroads, § 227, to the effect that the injury to an employee must not only arise out of, but it must occur in, the course of the employment. Labatt on Master and Servant, § 537, announces a like rule, and both texts are supported by *Hobbs v. Great Northern R. Co.*, 80 Wash. 678, 142 Pac. 20, where it is said:

"The rule of liability against a railway company engaged in interstate commerce is predicated upon the duty of the company to furnish its servant with a reasonably safe place

in which to perform the work it requires of him, or while he is about those places which are incident to his work, and this duty is incident to all places where the employee must necessarily be in connection with his employment. But that duty is not incident to places where a servant is not required to be, nor expected to be, in the performance of his work. Nor does it cover the servant when he is not within the scope of his employment or doing some act which is not incidental to his employment. This rule is sustained by all the authorities, and the Federal act in no wise attempts to change it."

These boys were not upon this train in the discharge of any duty required by the railway company. It was neither an incident to their employment nor was it a place where it should be reasonably anticipated they might be, but on the contrary, the place was one where they had no business to be, and where they were expressly prohibited from being.

Assuming that Vanordstrand jumped on and off the train at the suggestion of Ward, such a suggestion would not make Ward a vice principal. A fellow servant does not become a vice principal because for the moment he assumes to give direction as to the method of doing the work. Disposing of a like contention in *Beck v. International Harvester Co.,* 85 Wash. 413, 148 Pac. 35, it was said:

"It may be true that, in the process of the work, Bittinger assumed to give such directions as were necessary to secure concert of action. But this does not make him the representative of the master. As we said in *Ponelli v. Seattle Steel Co.,* 64 Wash. 269, 116 Pac. 864:

" 'To hold that every time one servant suggests a plan for doing the work, or calls upon another servant to do something which in his judgment will facilitate the work, in making the suggestion or in directing the other servant, he becomes a vice principal and fixes a liability upon the master for any injury incurred in following the suggestion, or in accepting the direction where the duty of superintendence had not been intrusted to him by the master, would be to go further than any case with which we are familiar, and announce a new rule with no legal principle for its support'."

There being neither law nor fact upon which the verdict can stand, the motion for judgment notwithstanding the verdict was rightfully granted, and the judgment is affirmed.

Mount, Chadwick, Parker, and Holcomb, JJ., concur.