[No. 15979. Department Two. March 3, 1921.]

E. G. ADAMS, *Respondent*, v. WALKER D. HINES, *Appellant*.[1]

MASTER AND SERVANT (20-2)—INJURIES TO SERVANT—FEDERAL LIABILITY ACT—INTERSTATE COMMERCE. A section hand, injured on the derailment of a hand car, was not engaged at the time in interstate commerce or the business of the company, where he and others had quit work for the afternoon and, contrary to the rules of the company, had left their section to obtain supplies for their boarding club, without the knowledge of the company, which furnished free transportation for all supplies needed by the men.

SAME (77)—INJURIES TO SERVANTS—VICE PRINCIPALS—FOREMEN—AUTHORITY. A section foreman's order to his men to leave their section, contrary to the rules of the company, and obtain supplies for their boarding club, was not an order concerning the company's business and created no liability on the part of the company.

Appeal from a judgment of the superior court for Spokane county, Alex M. Winston, Esq., judge *pro tempore*, entered January 29, 1920, upon findings in

[1]Reported in 196 Pac. 19.

favor of the plaintiff, in an action for personal injuries sustained by a section hand in the derailment of a hand car. Reversed.

*A. C. Spencer* and *Hamblen & Gilbert,* for appellant.

*Richard B. Harris* and *Turner, Nuzum & Nuzum,* for respondent.

MITCHELL, J.—Action under the Federal Employers' Liability Act to recover damages for personal injuries. The case was tried by the court without a jury and resulted in findings and conclusions of liability on the part of the defendant, that the plaintiff had been injured by the negligence of the defendant, that the total damages amounted to four thousand dollars, from which amount the sum of fifteen hundred dollars should be deducted because of the contributory negligence of the plaintiff. Judgment for plaintiff was entered in the sum of twenty-five hundred dollars. No exceptions were taken by the plaintiff to the findings and conclusions, nor has he taken any appeal. Exceptions were taken by the defendant, who has appealed from the judgment.

The respondent had been employed for some days by the appellant as a member of a section gang engaged in surfacing, repairing and maintaining the upkeep of the main line of the defendant railroad, which was engaged in interstate commerce. The crew consisted of nine to twelve men, including a foreman, all of whom lived in a section house at a station or place called "Mack," on their section, which was a part of the main line of the railroad running through Adams county. At the section house, for the accommodation of themselves and one other not belonging to the crew, they conducted what they termed "a kind of club," bought their own supplies, did their own cooking, and each paid his part

of the cost and expense so incurred. On Saturday, April 27, in the forenoon while the gang was at work on the section, it appears there was talk among the men to the effect they would get through early and go to Washtucna for meat and groceries. The foreman testified he did not remember which ones of the crew spoke to him about it, but that:

"They asked me if I would take them to get food, to go for supplies, and I told them if we finished the work here we will have time to go down."

The foreman and his crew used a motor car for their transportation on the section. About the middle of that afternoon, they quit work and went to the section house. The water keg and about all the work tools were taken off the motor car. The foreman put some of his crew at work cleaning up around the section house. He took the remaining four or five of them, including the respondent, and two other persons not belonging to the crew (one of whom wished to go for supplies) on the motor car and proceeded to Washtucna, situated some twenty-five miles from the section in charge of this foreman. Washtucna is situated on a branch line of the railroad and is in the second section west of Mack.

Upon reaching Washtucna, meat and other supplies for the club were purchased by some of the party other than the foreman or the respondent. Within a few hundred yards after starting back, about or a few minutes before six o'clock, the motor car ran into an open switch, clear off the track, and caused the respondent's injuries complained of. Several times the foreman had taken a part of his crew to the same place for the same purpose, more than one of which trips it appears was not on the company's time. The crew worked ten hours per day—seven a. m. to six p. m. As to the rule of going off the section, the foreman testified as follows:

"Q. But you can't go off your section unless you are called for in case of emergency by some section foreman, isn't that correct? Ans. What? Q. That is the rule? Ans. When another section foreman wants to get help I go to him. Q. Unless that happens you can't go? Ans. No, sir. Q. Or the road master orders you? Ans. No. Q. Your work is within your own section, isn't it? Ans. Sure."

The evidence shows also that a foreman has the right to hire members of his gang. It also shows:

"The section foreman is assigned out to a certain piece of road called a section, and he sees that the upkeep and maintenance are done in a proper manner, and to watch the condition of the road, road bed and track and see that the men perform their duty, fulfill the working hours of the company and obey the road master's instructions."

The section men or foremen are not permitted to leave their jurisdiction without the permission of the road master, who can order them to assist in another section when needed for extra work therein. The road master testified that he never gave this foreman permission to go to Washtucna or to leave his section other than to help to work in another section. On cross-examination, the foreman was asked: "Now they never gave you permission to go off your division and get groceries did they?" He answered, "No, I never had any such permission." Upon the subject of the knowledge of his superiors of his going off his section for supplies, while his testimony in chief indicated such knowledge, on cross-examination he clearly testified: "Q. So far as you know they never knew you went off your division before this, did they? Ans. No."

There being no place on this section where all the supplies needed for the club house could be procured, the road master had informed the foreman of his right

to have free transportation for supplies from Spokane; and that there was no right in the foreman to use the company's time in getting groceries, etc., and that he had never known of its being done here or that such trips were made at all, until after this accident. The foreman testified, he had at times gotten supplies from Spokane but that he had paid the freight or express charges. The record is silent as to whether he stated those charges in his accounts against the company. It should be mentioned that the respondent, a Greek without understanding of the English language, didn't know where they were going when they left the section house on the afternoon he was hurt, and that on the trip after passing beyond the section he belonged to, he asked what they were going for and a member of the crew said they were going to buy some meat and supplies "but that isn't any of your business."

The main contention in the case is whether or not the respondent was "employed in interstate commerce" at the time he was injured, as that term is used in the act of Congress (Act April 22, 1908, 35 Stat. p. 65, ch. 149; U. S. Comp. St. 1916, § 8657-8665).

The language of the act of Congress is general rather than concrete. For the purposes of this case, it provides that every common carrier by railroad while engaged in interstate commerce, "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, etc." As supporting the judgment, attention is called to the recent case of *Philadelphia, B. & W. R. Co. v. Smith,* 250 U. S. 101, 63 Law Ed. 869. That case, however, is not helpful authority here. It was a case in which a cook employed by the company was injured in a collision between an engine and a camp car, on a side track, while he was at work in the camp car provided by the rail-

road company.  He was at work with a gang of bridge carpenters engaged in the repair of bridges along the entire line of the railroad, and were moved from point to point as the repair work required.  His duties were to take care of the camp car, keep it clean, attend to the beds, and prepare and cook the meals for himself and other members of the gang.

"He was employed by the defendant to assist, and actually was assisting the work of the bridge carpenters by keeping their beds and board close to their place of work, thus rendering it easier for defendant to maintain a proper organization of the bridge gang and forwarding their work by reducing the time lost in going to and from their meals and their lodging place."

The camp car was "furnished and moved by the defendant."  That is to say, he was injured at his post of duty according to a plan and design allowed, ordered and approved by the railroad company.  Not so in the case at bar, where the respondent was injured away from the section to which he belonged.  He was away not only without permission, but in the face of the rules of the railway company.  His place of duty was fixed, and on the occasion in question, the crew was in no sense forwarding the work of the employer by reducing the time to procure supplies.  The supplies could have been had at any time by delivery by the railway company at their club house door rather than use the employer's time to carry out the unnecessary plan of their foreman.

The respondent also relies on the case of *Baltimore & O. R. Co. v. Whitacre,* 124 Md. 411, 92 Atl. 1060, affirmed by the supreme court of the United States (242 U. S. 169, 61 Law Ed. 228). The decision of the supreme court of the United States does not go into particulars. As reported in the Maryland decision, it appears that

Whitacre was a front brakeman and was called about one o'clock in the morning to attend a train about to be moved in interstate commerce. He reported and proceeded through the yard of the railroad company to the engine which was to be coupled to his train. It was standing on a "ready track," and upon his inquiring of the fireman (the engineer not being present) whether he was ready to start, he received the answer:

"No, not quite. The tool boy had not been there and left him no tin cup, and he asked me to go and hunt the tool boy and get a tin cup."

That was the testimony of the plaintiff. Acting on what he understood to be the order of the fireman, he started to look for the tool boy and tin cup. He mistook a moving light for a lantern in the tool boy's hand. Suddenly the light disappeared behind an object subsequently ascertained to be an engine. Plaintiff took a few steps backward and fell into a cinder pit and was injured. The court concluded there was liability under the Federal act, resting its decision upon the case of *Philadelphia, B. & W. Co. v. Tucker*, 35 App. D. C. 123, and *North Carolina R. Co. v. Zachary*, 232 U. S. 248.

In the *Tucker* case, a locomotive fireman was properly called at an unusual time of the night from his lodging place for train service. In going to his engine and while he was upon the company's tracks, he became confused, it seems, by the passing of two trains running in opposite directions, and was killed. It was contended by the company that there could be no liability until he reached the engine or conveyance of the company, that until then he was not under the master's control. But the court held otherwise, saying when Tucker was killed, he was upon the premises of the defendant, in response to its call, to assume the duties

he had been engaged by the defendant to assume, and for their mutual interest and advantage; and further said:

"We think the better rule, the one founded in reason and supported by authority, is that the relation of master and servant, in so far as the obligation of master to protect his servant is concerned, commences when the servant, in pursuance of his contract with the master, is rightfully and necessarily upon the premises of the master."

The *Zachary* case was similar. A locomotive fireman after inspecting, oiling, firing and preparing his engine for starting on a trip, attempted to cross certain tracks that intervened between the engine and his boarding house, and was struck and killed by another engine. The state court held that the Federal act did not apply, but the United States supreme court held that it did. Neither of the three cases is applicable here, where the employee's situation was lacking in the essential spoken of in the *Tucker* case, that of being "rightfully and necessarily" at the place of· business at the time of the injury.

In the case of *Morrison v. Chicago, M. & St. P. R. Co.,* 103 Wash. 650, 175 Pac. 325, speaking of determining if one is or is not engaged in interstate commerce, in a given case, we said that test is:

"Would the performance of the act in which the employee was engaged directly and immediately tend to facilitate the movement of interstate commerce, or conversely, would the failure to perform the act directly and immediately interfere with or hinder the movement of such commerce? In applying this test the three essential factors to be considered are time, place and intent."

By that test, the law though "intended to be applied in spirit rather than by letter," cannot be made to

cover this case. Without any authority, the foreman and part of his crew, including the respondent, were away on the company's time, as they (other than the respondent) had been before, to purchase supplies to last for two or three weeks, pursuant to their club house plan, when there was no necessity whatever to conduct their club house so as to either take them off their section or to lose any time from their service to the railroad company. That there was no necessity, is shown by the evidence to the effect that, after the accident and up to the date of the trial, the same foreman and his crew, at the same section club house, had provided well for their meals by railroad transportation of needed supplies—a plan at all times theretofore available and sufficient when employed. While the accident occurred on the appellant's property, respondent's engagement at the time was not so directly connected with interstate commerce as to constitute an integral part of it.

"To render the carrier liable, the negligent act must occur while the employees are doing some act *required* in the prosecution of the carrier's business." *Reeve v. Northern Pac. R. Co.*, 82 Wash. 268, 144 Pac. 63, L. R. A. 1915C 37.

The authority of the section foreman to hire and discharge members of the crew is not controlling in this case to fix any liability upon the appellant. If respondent, at the time he was injured, was under an order of the foreman, he was yielding to an order beyond the scope of the foreman's authority. It was an order that had no reference to the master's concerns, and there was, of course, no liability on the master's part. This is the general rule and has been uniformly followed in this state. *Reeve v. Northern Pac. R. Co.*, 82 Wash. 268, 144 Pac. 63, L. R. A. 1915C 37; *Hobbs v. Great*

*Northern R. Co.*, 80 Wash. 678, 142 Pac. 20, L. R. A.
1915D 503; and *Vanordstrand v. Northern Pac. R. Co.*,
86 Wash. 665, 151 Pac. 89.

Reversed, with directions to the trial court to enter a
judgment dismissing the action.

HOLCOMB, MOUNT, MAIN, and TOLMAN, JJ., concur.