[Civil No. 2068.  Filed February 7, 1924.]

[222 Pac. 717.]

# ARIZONA EASTERN RAILROAD COMPANY, a Corporation, Appellant, v. ELI HUDSON, Appellee.

1. MASTER AND SERVANT—EMPLOYERS' LIABILITY LAW NO PROTECTION TO EMPLOYEE DOING THINGS FORBIDDEN.—Employers' liability is restricted to the duties and scope of work which men are to do in their employment, and, where an employee goes outside those restrictions and does something which he is not employed to do, he may not recover for injuries due to such voluntary act, Employers' Liability Law affording no protection to an employee while doing things forbidden.

2. MASTER AND SERVANT—THAT PLAINTIFF WAS REQUIRED TO MOVE FROM DEFENDANT'S PROPERTY AFTER INJURY INADMISSIBLE.—In personal injury action, plaintiff's statement on direct examination that he had a family and was required shortly after the accident to move from defendant's property was foreign to issues and its admission was error.

3. MASTER AND SERVANT—INJURY TO TRACK-WALKER HELD NOT IN COURSE OF EMPLOYMENT. — Where a section foreman directed plaintiff, a track-walker, to place the motor-car on the railroad tracks and go with him to a near-by town, on the way back from which the motor-car jumped the tracks and caused injuries to plaintiff, *held* that, since at the time of injury plaintiff was not doing the work which he was hired to do, the accident did not happen in the course of his employment, but was due to conditions independent of and not contemplated by it.

APPEAL from a judgment of the Superior Court of the County of Maricopa.  R. C. Stanford, Judge. Judgment reversed.

1. Constitutionality, application, and effect of federal Employers' Liability Act, see notes in 47 L. R. A. (N. S.) 38; 48 L. R. A. (N. S.) 987; L. R. A. 1915C, 47. See, also, 28 R. C. L. 785.

3. What is accident arising out of and in course of employment within the Employers' Liability Act, see note in Ann. Cas. 1914D, 1284. See, also, 28 R. C. L. 796.

See 26 Cyc. 1079, 1088, 1422.

Mr. G. P. Bullard, for Appellant.

Messrs. J. J. Cox and A. Y. Moore, for Appellee.

LYMAN, J.—In an action based upon the state Employers' Liability Law (Civ. Code 1913, pars. 3153–3179), Eli Hudson recovered a verdict and judgment against the Arizona Eastern Railroad Company. This appeal from that judgment raises the question as to whether or not there was any evidence that the accident occurred in the course of the work which Hudson was employed to do.

For some months prior to the accident he had been working as a section-hand at Queen Creek, twenty-two miles from Mesa, doing what was called track-walking, inspecting sections of the railway track by passing over some portion of it each day. The foreman of the section, Coon, on the day of the accident just before noon, directed Hudson to place a small motor-car upon the railway tracks and go with him to Mesa. Coon claimed to have had two errands in Mesa—one to visit the dentist and have his teeth fixed, and the other to get two guard-rail bolts from the shops of the Arizona Eastern at Mesa, to be used in track repair. On the way back from Mesa late in the afternoon, the motor-car on which Coon and Hudson were riding jumped the track from some cause unexplained, causing the injuries to Hudson for which he claims compensation in this action.

It is essential to plaintiff's right to recover to show that the accident happened while he was doing the work which he was hired to do. He is not aided by any presumptions. Hudson testifies that he was hired to do track-walking. Coon, who had been discharged from the service of the appellant, testified that "Hudson was supposed to do out in the section anything I told him to do." From that it appears that his duties were confined to the Queen Creek

section. Coon further testified that Hudson's work was "to go over the track and look up broken rails, and drive down spikes and tighten bolts, and look out for switches and switch lights, and anything he sees dangerous he is supposed to communicate to me." 'All these duties were exercised as indicated by this witness within the limits of the section where he worked. A rule of the appellant regulating the work of the section-gang was as follows:

"Foremen must remain with their men and personally superintend and engage in the work of the gang, and must never absent themselves from duty without consent from their superior officer."

Coon further testified that to leave the section without permission was a violation of that rule.

The import of this rule is clear, and the evidence is undisputed that the scope of the duties of both the foreman and all the members of the section-gang, in the absence of express direction, was restricted to the limits of the section on which they were employed to work. This accident occurred 20 miles from the Queen Creek section, at a point where neither Hudson nor the foreman had any right to be at that time, beyond the limits of their section, and doing something outside the scope of their duty.

Employers have the right to define the duties and limit the scope of the work which the men are to do in their employment. The employer's liability is restricted within such limitation, and, if the employee goes outside of those restrictions, and does something else which he is not employed to do, even though it might be ostensibly a service to the employer, he is not entitled to recover for injuries due to such voluntary act. The employers' liability law affords no protection to the employee while he is doing the thing which he is forbidden to do. *Calumet Mining Co.* v. *Chambers,* 20 Ariz. 54, 176 Pac. 839; *Arizona Eastern Railroad Co.* v. *Matthews,* 20 Ariz.

282, 7 A. L. R. 1149, 180 Pac. 159; *Modoc County* v. *Industrial Acc. Com.*, 32 Cal. App. 548, 163 Pac. 685; *Sherer & Co.* v. *Industrial Acc. Com.*, 175 Cal. 615, 166 Pac. 318.

Hudson undertakes, however, to base his claim upon the circumstance that there was need of two small bolts to repair the track, and that it was necessary for himself and foreman to go to Mesa to get these bolts; that they did actually get them, and that they were placed in the track several days later; and that, at any rate, whether it was necessary or not, he was merely obeying the orders of the foreman, without which he would have been discharged. There is no evidence that Hudson did not have actual knowledge of the rule forbidding the section-gang to go outside their section without permission from some higher authority than the foreman; but, whether the express terms of the rule were known to him or not, the conditions under which they were working, and which he had observed during the months of his employment on that section, constituted abundant notice to him that in going to Mesa for these bolts he was performing no service for his employer. He knew that there was telephone connection between Queen Creek and other points along the road of the Arizona Eastern, including Gilbert, Mesa and Phoenix, and directly with the shops and offices of that company, and that trains were running frequently between all those points, by means of which the bolts could have been had within a few hours, and without labor or appreciable expense to anyone.

It is significant that, in the several reports made by the foreman of this accident, no mention is made of the bolts. In all those reports Coon stated that they went to Mesa in order to get his teeth fixed by the dentist. In Coon's report of his talk with Hudson about going to Mesa, he makes no mention of getting bolts. He says in one of his reports, "I feel as

though I am to blame for this.'' Hudson himself, in his account of what happened, said that he went to Mesa with Coon because Coon had a bad toothache, and wanted it treated. He also said that he knew he was going to Mesa on his own time off the division, and not on company business; but that, if he had not gone, Coon would have fired him. No mention of bolts was made by him as the occasion or the excuse for going to Mesa. It is clear that Hudson went along, not because he believed he was performing a service for his employer, but because he feared the consequence of not following the directions of the boss, however unfair it might be to his employer. He saw the right and honest course to follow, but was tempted by the faithless Coon for his own selfish and private ends to take from his employer both time and resources. Hudson, because he thought it would be to his own advantage to yield to the temptation, went with Coon, and suffered the grievous consequences. Coon in his report honestly says the blame is his. It is evident that the blame is not that of the employer. It is the contention of appellee that whether Coon was authorized or not to go for the bolts, his mere order was a protection to Hudson. That, however, is not the law, even if Hudson was not informed of such lack of authority. *Adams* v. *Hines,* 114 Wash. 672, 196 Pac. 19. It is apparent that Coon, not only had no authority to take Hudson, but that Hudson himself knew that he had none.

The appellant assigns as error two rulings upon the admission of evidence. The plaintiff testified on direct examination over objection that he had a family, and that he was required shortly after the accident to move from the company's property. This evidence was foreign to every issue of the case. The best that can be said of it is that it served no legitimate purpose, and tended to injure

the appellant.   Lawyers in their zeal to promote the cause of their clients sometimes persuade themselves that there is a legitimate basis for such testimony. But the trial judge is without such excuse.   To admit it is a species of lawlessness.   Unless such practice is not only condemned, but made to bear its legitimate fruit, the records will continue to be tainted with such errors.

There is no evidence that Hudson was working for the appellant at the time of the accident.   On the contrary, it appears that he was not doing the work which he was hired to do, and that the accident did not happen in the course of such employment, but was due to conditions entirely independent of such employment, and not contemplated by it.

The judgment is reversed, with directions that the action be dismissed.

ROSS, J., concurs.

McALISTER, C. J. (Dissenting).—I regret not being able to concur in the opinion of the majority, but the record convinces me that the judgment should be affirmed for the reasons which follow.

At the time of the accident appellee was employed as a section-hand and track-walker.   He worked with the gang part of the time, but as track-walker rode the section—one end one day and the other the next— for the purpose of observing the track, remedying such conditions as required immediate attention and were within his power to fix himself.   If he found anything dangerous and beyond his power to handle alone, it was his duty to report it to the foreman. It appears from the testimony of both men and the section-foreman, Coon, that on the afternoon of the 27th of May the former reported that two guard-rails were broken or torn out at Magma, and that he was instructed by the foreman to put them in the

next day, but when they went to work the following morning at 7:30 appellee told the foreman he had no guard-rail bolts, and thereupon the latter tried to call the dispatcher at Phoenix by phone to request that some be sent out, but could get no answer; that they went to Germania, six miles west of Queen Creek Station, to unload ties, and Coon told appellee to take the velocipede off the track and go with him (evidently later in the day and on the regular section-car) to Mesa; that he had been bothered with toothache for several days and had slept only for two hours the night before; that he was going to have his teeth fixed, and "for him to come along and we would try to borrow some bolts from Mr. Dickson" (foreman of the Mesa section) "while we were down there"; that appellee made no reply but afterwards went with Coon to Mesa, where they got from Dickson at the section toolhouse the guard-rail bolts, put them on the car and started away; that to obtain the bolts was just as important a part of the trip to Mesa as to have Coon's teeth fixed. On three separate dates previous to the trial, however, May 28th, May 30th and July 11th, 1921, Coon had made a written report to the company relative to the accident, and on the 14th of November, 1921, an affidavit, and in all of these he had stated that his reason for going to Mesa was to get his teeth fixed; no reference whatever being made in any of them to the fact that the trip was also for the purpose of getting the guard-rail bolts. At the time of the trial Coon was not in the employ of appellant, having been discharged on December 5, 1921, for taking this trip to Mesa in violation of rule 851 of the company, which reads as follows:

"Foremen must remain with their men and personally superintend and engage in the work of the gang, and must never absent themselves from duty without consent from their superior officer."

Appellant contends that the evidence shows conclusively that at the time appellee was injured he was not engaged in the service of his employer, but was performing an act wholly outside of and beyond the scope of his employment, for the reason that the trip to Mesa was in violation of rule 851, wholly unnecessary, and made solely on the private business of Coon, which was to get his teeth fixed, and the opinion of the majority, as I understand it, upholds the last contention as well as the other two. It says:

"It is clear that Hudson went along, not because he believed he was performing a service for his employer, but because he feared the consequence of not following the directions of the boss, however unfair it might be to his employer."

The purpose of the trip to Mesa, however, is, or should be, so far as this court is concerned, a closed book, because the jury determined that matter when it decided the case in favor of appellee's contention that he went to Mesa upon company business; that is, to get the bolts. The verdict for him could have been reached in no other way, because the court instructed the jury that, if it believed from the evidence that at the time appellee was injured he was engaged either upon his own business or upon the private business of Foreman Coon, instead of upon the business of his master, the Arizona Eastern Railroad Company, he could not recover. And the evidence bearing on the question, though sharply in conflict, is ample to support the finding. It is true Coon did not refer in his reports or affidavit to the fact that to get the bolts was one of the purposes of the trip to Mesa, but he and appellee both testified at the trial that this formed just as important a part of their trip as to have Coon's teeth fixed, and the fact that they secured the bolts from Mr. Dickson and were taking them back to Queen Creek to repair the broken rails at the time of the accident corroborates this testimony. And

it is noticeable also that Coon said nothing about appellee's going with him to Mesa until he had tried by phone to have the bolts sent out from Phoenix and been unsuccessful. Failing to refer in his reports or affidavit to obtaining the bolts as one of the moving causes of the trip by no means necessarily implies that the testimony of himself and appellee at the trial that such was one of its objects was not true. The jury could and perhaps did take the view that Coon did not disclose this fact in his reports and affidavit because he feared that to do so would render the company liable in damages and jeopardize his position, for, if it had felt that his testimony at the trial was untrue and prompted by a desire to punish the company for having discharged him, it could, and I feel sure would, have said so by its verdict. And the testimony of appellee to the same effect is not necessarily to be discarded or regarded as of no weight merely because the special claim adjuster of appellant testified that appellee told him at the hospital on June 21st following the accident that he knew he went to Mesa on his own time and not on company business, because appellee's testimony is in effect a denial of this. The case, therefore, should be disposed of upon the theory that the trip to Mesa was made on company business.

The contention is also upheld that in leaving the section without permission Coon and appellee violated rule 851, requiring foremen to remain with their men and not absent themselves from duty without the consent of their superior officer, and that, in consequence of this, both he and appellee were not at the time of the accident acting within the scope of their employment. As I see it, this rule has no bearing whatever on the case, because it was promulgated solely for the guidance of foremen and was not intended to govern the men in their work under them. The mere fact that they could not absent themselves

from the section does not mean that they could not send one of those working for them away from the gang, or even the section itself if necessary, to perform a service required by the work on that part of the track, though to apply the rule as if it read "foremen, section-hands, and track-walkers must remain with the gang, etc.," would prevent such action. The foreman could not, upon this theory, direct one of his men to return to the section-house for material forgotten or found after leaving for the day to be greatly needed, and a track-walker could not ride his section unless accompanied by the crew. It is clear that such is not the meaning of this rule, and that it is not a defense to an action by one for whom it was not intended. If Coon, the foreman, had been injured and were suing it would in all probability prevent recovery by him, but this fact in no way affects the status of appellee who was not a foreman.

Notwithstanding the finding of the jury that appellee did make the trip to get the bolts, it is urged, and this view is sustained by the opinion of the court, that appellee was not engaged in the service of his employer at the time of the injury, for the further reason that making such a trip was not a part of the work he was employed to do and was wholly unnecessary. It is said there was no occasion to take the time of the company to go for the bolts because a train ran daily from Phoenix by Mesa and Queen Creek, and a request to the proper party over the phone would have brought them out on it. But an effort to do this failed, and the foreman then told appellee to go with him and his gang to Germania, where they were going to work that morning and later in the day to Mesa with him where they could get the bolts from Dickson. Germania and Mesa were only about fifteen miles apart, and he knew that it would take only a short time, less than an

hour, to make this trip on the section motor-car, and the track at Magma, with its broken and torn-out guard-rails was in a condition that called for prompt attention, and the guard-rail bolts to repair it with could, he felt sure, be obtained in Mesa. With these facts before it the jury said by its verdict for appellee that going for the bolts was an act required in the prosecution of the employer's business, because it was instructed by the court that, if it found from the evidence the injury occurred while appellee was doing some act other than one required in the prosecution of the business of appellant, it should return a verdict for the appellant, and, as I view it, the evidence justified both the instruction and the finding.

But whether it was unnecessary to get the bolts in this way is not controlling, so far as appellee is concerned, because it was not for him to say how they should be gotten to the section; that was a matter wholly under the control of the foreman, the agent of the company under whom Hudson was working, and if he did not select the better way it was nothing for which appellee was responsible. He cannot be held to have gone outside the scope of his employment in obeying an order of his foreman so long as in doing so he was furthering his employer's business within the sphere of his employment in a way reasonably and fairly adapted to accomplish the end sought, and it was not contrary to the rule and regulation of the company for him to do so. Rule 851, it is true, prohibited Coon's going, but it had no such effect upon appellee, and the mere fact that the former went in violation of this regulation cannot affect in the least the status of the latter. Neither did the fact that he was employed to work as a section-hand, to ride the track, and to do whatever the foreman told him to do on the section of itself constitute a rule or regulation against his going in obedience to an order of his foreman, because it was only upon the

26 Ariz.—9

adjoining section, took a very short time, was for material required· to repair upon his own section a piece of track in such a dangerous condition as to call for immediate attention, and there was no other better way of getting it promptly available, the ordinary method having failed.

Under these facts and the finding of the jury that the trip was taken in furtherance of his employer's business, it seems plain that appellee was not· only aiding that business but doing so within the scope of his employment. He was performing an act in line with what he was hired to do, namely, taking material needed to repair a dangerous place in the track to the point where it was to be used, and the mere fact that he went upon an adjoining section to get it rather than to some other point upon his own does not place his act outside the scope of his employment. To say that it was his duty to refuse to go, either with or without the foreman, because it was off his section, is to require something that in all probability no man situated as he was would have done. According to the contention of appellant, which is sustained by the majority opinion, he should have said in effect to the foreman:

"I was hired to work on this section. You have no right or authority to send me off of it to get bolts or for any other purpose."

But in the peculiar situation in which he was placed this was not required of him. The request was reasonable, and his compliance proper. There is nothing to show that he knew or should have known that the foreman had no right or authority to direct him to go. In fact the record is bare of anything disclosing a lack of such authority in him, but upon the other hand it seems plain that it was his duty to see that the bolts were secured, and as long as he chose a method fairly and reasonably adapted to this purpose, when there was no rule or

regulation on the subject, it certainly cannot be said that it was the duty of one working under him to question his authority.

If appellee had been ordered to go for the sole purpose of getting Coon's teeth fixed, his injury would have been received while performing an act outside the scope of his employment, and he could not recover, even though he had gone in obedience to the foreman's order. *Adams* v. *Hines,* 114 Wash. 672, 196 Pac. 19. This citation is authority for the foregoing statement, but in view of the fact that appellee made the trip upon company business it has no application to the case at bar. This is plain from its facts. Adams was a section-hand and had complied with the directions of his foreman to accompany him and others of the men under him on a motor-car to a town some twenty or thirty miles away to get supplies for a clubhouse run by the foreman and his men, and while on the trip he was injured by the car's leaving the track. He contended that, notwithstanding the trip had no relation to the master's business, he should recover because he was obeying an order of the foreman, but the court refused to uphold this claim, using the following language:

"If respondent, at the time he was injured, was under an order of the foreman, he was yielding to an order beyond the scope of the foreman's authority. It was an order that had no reference to the master's concerns, and there was, of course, no liability on the master's part. This is the general rule and has been uniformly followed in this state. *Reeve* v. *Northern Pac. R. Co.,* 82 Wash. 268, 144 Pac. 63, L. R. A. 1915C, 37; *Hobbs* v. *Great Northern R. Co.,* 80 Wash. 678, 142 Pac. 20, L. R. A. 1915D, 503; and *Vanordstrand* v. *Northern Pac. R. Co.,* 86 Wash. 665, 151 Pac. 89."

The judgment should be affirmed.